24323

In the Matter of Wheeler TILLMAN, Respondent.

(462 S.E. (2d) 283)

Supreme Court

*Attorney General Charles M. Condon* and *Assistant Attorney General James G. Bogle, Jr.,* of Columbia, *for complainant.*

*L. Mendel Rivers, Jr.,* North Charleston, *for respondent.*

Submitted June 27, 1995.

Decided Sept. 18, 1995.

*Per Curiam:*

Respondent violated Rule 1.16(a)(3) of Rule 407, SCACR, by continuing to represent a client who had discharged him and by improperly asserting a common-law retaining lien on her file. We impose a public reprimand.

## FACTS

Clients hired respondent in September 1991 following an automobile accident in June 1991. They executed a written contract: it provided for a contingent fee of 33% or 40% depending on whether there was trial preparation. Alternatively, it provided for an hourly fee of $105/hour if the attorney was discharged prior to settlement or verdict.

On June 18, 1993, client called respondent's secretary and told her she wished to discharge respondent and pick up her file. Respondent called client back, tried to talk her out of firing him, and told her she owed him $2400.[1] Respondent's own time record shows, however, that through June 17, 1993, he had devoted only 5.6[2] of chargeable time to client's case.[3] Respondent contemporaneous notes reflect his understanding that client wished to terminate him on June 18. Nonetheless, his time record shows that he began working on client's file again *after* the termination call.

On June 21, 1993, client sent respondent a certified letter which, admittedly, he never picked up. In this letter, client explicitly fired respondent, contested the $2400 fee he had quoted, and suggested they go to the Resolution of Fee Dis-

---

[1] 22.86 hours x $105 = $2400.

[2] 5.6 hours x $105 = $588.

[3] Although respondent later maintained the time record did not truly reflect all the billable hours he spent on client's case, he was unable to explain how he had arrived at the $2400 figure.

putes Board. Respondent received a copy of the certified letter on June 29 during a face-to-face meeting with client. The original certified letter was returned to client in mid-July after three unsuccessful attempts to deliver it.

Meanwhile, client contacted another attorney. This attorney testified he had a letter hand-delivered to respondent on June 24, 1993, informing him of his representation of client. Respondent testified, however, he received the letter through regular mail on Monday, June 28. Meanwhile respondent put together a brief demand letter to client's insurance company, including copies of medical reports and demanding $53,831.39. This letter was dated Sunday, June 27 well after respondent became aware client was seeking to discharge him. It was apparently mailed on June 28.

On June 29, respondent and the new attorney had a heated telephone conversation in which respondent accused the attorney of "stealing" client or "claim jumping." Later that day client went to respondent's office to fire him again and to attempt to collect her file. Respondent again refused to give her the file unless she paid him $2400. Over the next few months, respondent refused to notify the insurance companies he no longer represented client refused to return her file, and refused to cooperate with the Charleston Bar's local grievance mediator. After the Board of Grievances became involved, respondent finally turned over his file (March 1994), but not before filing a grievance against client's second attorney for "claim jumping."[4]

Throughout these proceedings respondent has asserted two alleged liens: (1) a common law retaining lien on client's file for unpaid fees and (2) a "lien on representation." He derives these two liens from our decision in *In re Anonymous*, 287 S.C. 250, 335 S.E. (2d) 803 (1985) (*Anonymous*).

## LAW

The Rules of Professional Conduct provide a lawyer shall cease representation if he is discharged. Rule 1.16(a)(3). The comment to this rule states, "A client has a right to discharge a lawyer at any time, with or without cause, subject to liabil-

---

[4] This complaint was dismissed.

ity for payment for the lawyer's services." The comment also states "Even if the lawyer has been unfairly discharged by the client, a lawyer must take all reasonable steps to mitigate the consequences to the client. **The lawyer may retain papers as security for a fee only to the extent permitted by law.**" (Emphasis added.) *See also* Rule 1.8(j)(1) of Rule 407, SCACR (recognizing lien to secure fees or expenses).

The last sentence highlighted above is a reference to South Carolina's recognition of an attorney's common law retaining lien. In *Anonymous* this Court held that an attorney's assertion of such a lien was not a *per se* ethical violation. We cautioned, however, that the mere existence of this legal right must yield to ethical considerations, and warned that the attorney bears the burden of showing the circumstances justify assertion of a lien because **"the client is financially able but deliberately refuses to pay a fee that he has clearly agreed upon and is due."** *Id.* (Emphasis added.) Factors to be considered by an attorney contemplating assertion of a retaining lien on client property are:

(1) the client's financial situation;
(2) the client's sophistication;
(3) the reasonableness of the fee;
(4) the client's clear understanding and agreement to pay the amount of the fee owed;
(5) whether imposition of the lien would prejudice important rights of the client or other parties;
(6) whether failure to impose the lien would result in fraud or gross imposition by the client; and
(7) whether there are any other less stringent means to resolve the dispute or secure the fees owed. *Id.*

### ANALYSIS

As noted above, respondent claims two separate liens arising from his representation of client: (1) a "lien on representation" and (2) a common-law retaining lien on her file. We find no basis in law for a "lien on representation" and no basis in fact supporting assertion of a retaining lien here.

Rule 1.16(a)(3) explicitly gives the client the right to discharge the attorney at any time, with or without cause. Re-

spondent's claim to a "lien on representation" is antithetical to the clear language of the rule. In continuing to work on client's case, and in refusing to notify the insurance companies for six months after he was discharged that he no longer represented client, respondent unequivocally violated Rule 1.16(a)(3).

Further, respondent cannot meet his burden of showing the circumstance justified assertion of the common-law retaining lien here. In order to establish the right to the lien, he must show, among other things, that client "deliberately refused[d] to pay a fee [that was] clearly agreed upon and is due." *Anonymous, supra.* Here, respondent sought a $2400 fee when his own records showed he had earned $588. In her certified letter dated June 21, 1993, client disputed the amount of the fee and suggested they take the matter before the Resolution of Fee Disputes Board. Under these facts, respondent cannot show even a good-faith basis for asserting a retaining lien, much less meet the burden imposed upon him by *Anonymous.*

For his misconduct in this matter, we impose upon respondent a PUBLIC REPRIMAND.