Attorney Grievance Commission of Maryland v. Charles Stephen Rand, Misc. Docket AG No. 40, Sept. Term, 2014 Opinion by Battaglia, J.

**ATTORNEY DISCIPLINE – SANCTIONS – INDEFINITE SUSPENSION**

Indefinite suspension is the appropriate sanction when an attorney fails to keep his client apprised of the costs of representation and the status of filings, asserts an invalid retaining lien and fails to comply with requests from Bar Counsel for documents and information. MLRPC 1.4, 1.5, 1.15(a), 1.16(d), 8.1, 8.4(a), (c) and (d) and Maryland Rule 16-606.1

Circuit Court for Montgomery County,
Maryland
Case No. 30325-M
Argued: September 29, 2015

IN THE COURT OF APPEALS
OF MARYLAND

Misc. Docket AG No. 40
September Term, 2014

---

ATTORNEY GRIEVANCE
COMMISSION OF MARYLAND

v.

CHARLES STEPHEN RAND

---

Battaglia
Greene
Adkins
McDonald
Watts
Harrell, Jr., Glenn T.
(Retired, Specially
Assigned),
Cathell, Dale R. (Retired,
Specially Assigned),
                    JJ.

---

Opinion by Battaglia, J.
Adkins and McDonald, JJ., dissent.

---

Filed:

Charles Stephen Rand, Respondent, was admitted to the Bar of this Court on December 14, 1973. On September 17, 2014, the Attorney Grievance Commission, ("Bar Counsel"), acting pursuant to Maryland Rule 16-751(a),[1] filed a Petition for Disciplinary or Remedial Action against Rand related to his representation of Nancie Klein, in which it was alleged that he violated the following Maryland Rules of Professional Conduct ("Rule"): 1.1 (Competence),[2] 1.3 (Diligence),[3] 1.4 (Communication),[4] 1.5(a) (Fees),[5]

---

[1] Rule 16-751(a) provides, in relevant part:

(a) Commencement of disciplinary or remedial action. (1) *Upon approval or direction of Commission.* Upon approval or direction of the Commission, Bar Counsel shall file a Petition for Disciplinary or Remedial Action in the Court of Appeals.

[2] Rule 1.1 provides:

A lawyer shall provide competent representation to a client. Competent representation requires the legal knowledge, skill, thoroughness and preparation reasonably necessary for the representation.

[3] Rule 1.3 provides:

A lawyer shall act with reasonable diligence and promptness in representing a client.

[4] Rule 1.4 provides:

(a) A lawyer shall:
    (1) promptly inform the client of any decision or circumstance with respect to which the client's informed consent, as defined in Rule 1.0(f), is required by these Rules;
    (2) keep the client reasonably informed about the status of the matter;
    (3) promptly comply with reasonable requests for information; and
    (4) consult with the client about any relevant limitation on the lawyer's conduct when the lawyer knows that the client expects

(continued . . .)

1.15(a) (Safekeeping Property),[6] 1.16(d) (Declining or Terminating Representation),[7] 8.1 (Bar Admission and Disciplinary Matters),[8] 8.4(a), (c), and (d) (Misconduct),[9] as well as Maryland Rule 16-606.1 (Attorney Trust Account Record-Keeping).[10]

---

(. . . continued)

> assistance not permitted by the Maryland Lawyers' Rules of Professional Conduct or other law.
>
> (b) A lawyer shall explain a matter to the extent reasonably necessary to permit the client to make informed decisions regarding the representation.

[5] Rule 1.5 provides, in relevant part:

> (a) A lawyer shall not make an agreement for, charge, or collect an unreasonable fee or an unreasonable amount for expenses. The factors to be considered in determining the reasonableness of a fee include the following:
>> (1) the time and labor required, the novelty and difficulty of the questions involved, and the skill requisite to perform the legal service properly;
>> (2) the likelihood, if apparent to the client, that the acceptance of the particular employment will preclude other employment of the lawyer;
>> (3) the fee customarily charged in the locality for similar legal services;
>> (4) the amount involved and the results obtained;
>> (5) the time limitations imposed by the client or by the circumstances;
>> (6) the nature and length of the professional relationship with the client;
>> (7) the experience, reputation, and ability of the lawyer or lawyers performing the services; and
>> (8) whether the fee is fixed or contingent.

[6] Rule 1.15 provides, in relevant part:

> (a) A lawyer shall hold property of clients or third persons that is in a lawyer's possession in connection with a representation separate from the lawyer's own property. Funds shall be kept in a separate account maintained pursuant to Title 16, Chapter 600 of the Maryland Rules, and records shall

(continued . . .)

2

(. . . continued)

be created and maintained in accordance with the Rules in that Chapter. Other property shall be identified specifically as such and appropriately safeguarded, and records of its receipt and distribution shall be created and maintained. Complete records of the account funds and of other property shall be kept by the lawyer and shall be preserved for a period of at least five years after the date the record was created.

[7] Rule 1.16(d) provides:

(d) Upon termination of representation, a lawyer shall take steps to the extent reasonably practicable to protect a client's interests, such as giving reasonable notice to the client, allowing time for employment of other counsel, surrendering papers and property to which the client is entitled and refunding any advance payment of fee or expense that has not been earned or incurred. The lawyer may retain papers relating to the client to the extent permitted by other law.

[8] Rule 8.1 provides:

An applicant for admission or reinstatement to the bar, or a lawyer in connection with a bar admission application or in connection with a disciplinary matter, shall not:

(a) knowingly make a false statement of material fact; or
(b) fail to disclose a fact necessary to correct a misapprehension known by the person to have arisen in the matter, or knowingly fail to respond to a lawful demand for information from an admissions or disciplinary authority, except that this Rule does not require disclosure of information otherwise protected by Rule 1.6.

[9] Rule 8.4 provides, in relevant part:

It is professional misconduct for a lawyer to:
(a) violate or attempt to violate the Maryland Lawyers' Rules of Professional Conduct, knowingly assist or induce another to do so, or do so through the acts of another;

\* \* \*

(continued . . .)

3

(. . . continued)
   (c) engage in conduct involving dishonesty, fraud, deceit or misrepresentation;
   (d) engage in conduct that is prejudicial to the administration of justice[.]

[10] Maryland Rule 16-606.1 states, in relevant part:

   (a) Creation of records. The following records shall be created and maintained for the receipt and disbursement of funds of clients or of third persons:

   *       *       *

   (2) Deposits and disbursements. A record for each account that chronologically shows all deposits and disbursements, as follows:
       (A) for each deposit, a record made at or near the time of the deposit that shows (i) the date of the deposit, (ii) the amount, (iii) the identity of the client or third person for whom the funds were deposited, and (iv) the purpose of the deposit;
       (B) for each disbursement, including a disbursement made by electronic transfer, a record made at or near the time of disbursement that shows (i) the date of the disbursement, (ii) the amount, (iii) the payee, (iv) the identity of the client or third person for whom the disbursement was made (if not the payee), and (v) the purpose of the disbursement;
       (C) for each disbursement made by electronic transfer, a written memorandum authorizing the transaction and identifying the attorney responsible for the transaction.
   (3) Client matter records. A record for each client matter in which the attorney receives funds in trust, as follows:

       (A) for each attorney trust account transaction, a record that shows (i) the date of the deposit or disbursement; (ii) the amount of the deposit or disbursement; (iii) the purpose for which the funds are intended; (iv) for a disbursement, the payee and the check number or other payment identification; and (v) the balance of funds remaining in the account in connection with the matter; and
       (B) an identification of the person to whom the unused portion of a fee or expense deposit is to be returned whenever it is to be returned to a person other than the client.

(continued . . .)

By Order dated September 22, 2014, this Court referred the matter to Judge Gary E. Bair of the Circuit Court for Montgomery County,[11] for a hearing in accordance with Maryland Rule 16-757(a).[12] Rand was served with the Petition for Disciplinary or

---

(. . . continued)

(4) Record of funds of the attorney. A record that identifies the funds of the attorney held in each attorney trust account as permitted by Rule 16-607 b.

\* \* \*

(c) Electronic records. Whenever the records required by this Rule are created or maintained using electronic means, there must be an ability to print a paper copy of the records upon a reasonable request to do so.
 (d) Records to be maintained. Financial institution month-end statements, any canceled checks or copies of canceled checks provided with a financial institution month-end statement, duplicate deposit slips or deposit receipts generated by the financial institution, and records created in accordance with section (a) of this Rule shall be maintained for a period of at least five years after the date the record was created.

[11] Maryland Rule 16-752 states, in relevant part:

(a) Order. Upon the filing of a Petition for Disciplinary or Remedial Action, the Court of Appeals may enter an order designating a judge of any circuit court to hear the action and the clerk responsible for maintaining the record. The order of designation shall require the judge, after consultation with Bar Counsel and the attorney, to enter a scheduling order defining the extent of discovery and setting dates for the completion of discovery, filing of motions, and hearing.

[12] Maryland Rule 16-757 states:

(a) Generally. The hearing of a disciplinary or remedial action is governed by the rules of evidence and procedure applicable to a court trial in a civil action tried in a circuit court. Unless extended by the Court of Appeals, the hearing shall be completed within 120 days after service on the respondent of the order designating a judge. Before the conclusion of the hearing, the judge may permit any complainant to testify, subject to cross-examination, regarding the effect of the alleged misconduct. A respondent attorney may

(continued . . .)

5

Remedial Action, our Order, Petitioner's First Set of Interrogatories, Petitioner's First Request for Production of Documents and the Writ of Summons on October 4, 2014; he filed a Motion for More Definite Statement on October 23, 2014, which was denied. An answer to the Petition for Disciplinary or Remedial Action was filed by Rand on November 13, 2014, followed by a Revival of his Motion for More Definite Statement, which was denied on January 13, 2015. On December 12, 2014, Bar Counsel filed an Amended Petition for Disciplinary or Remedial Action in which the allegations that Rand violated Rules 1.1 and 1.3 were withdrawn.

---

(. . . continued)
  offer, or the judge may inquire regarding, evidence otherwise admissible of any remedial action undertaken relevant to the allegations. Bar Counsel may respond to any evidence of remedial action.
  (b) Burdens of proof. The petitioner has the burden of proving the averments of the petition by clear and convincing evidence. A respondent who asserts an affirmative defense or a matter of mitigation or extenuation has the burden of proving the defense or matter by a preponderance of the evidence.
  (c) Findings and conclusions. The judge shall prepare and file or dictate into the record a statement of the judge's findings of fact, including findings as to any evidence regarding remedial action, and conclusions of law. If dictated into the record, the statement shall be promptly transcribed. Unless the time is extended by the Court of Appeals, the written or transcribed statement shall be filed with the clerk responsible for the record no later than 45 days after the conclusion of the hearing. The clerk shall mail a copy of the statement to each party.
  (d) Transcript. The petitioner shall cause a transcript of the hearing to be prepared and included in the record.
  (e) Transmittal of record. Unless a different time is ordered by the Court of Appeals, the clerk shall transmit the record to the Court of Appeals within 15 days after the statement of findings and conclusions is filed.

Judge Bair held hearings on January 21 and 22, 2015 during which Bar Counsel presented testimony from Nancie Klein and her husband, Stephen Klein. Rand testified on his own behalf.

In addition, both Bar Counsel and Rand submitted substantial documentation, which was received in evidence, including Rand's fee agreement with Ms. Klein, various letters and email correspondence between Ms. Klein and Rand and Rand's account ledger, bank statements and IOLTA checks. On February 13, 2015, Bar Counsel filed Proposed Findings of Fact and Conclusions of Law, and Rand filed a Recommended Statement of Findings of Fact and Conclusions of Law.

The essence of Ms. Klein's complaint was that she had retained Rand to assist her in bringing a claim for age and race discrimination against her supervisor at the public school where Ms. Klein taught. Rand, after meeting with Ms. Klein and her husband, entered into a fee arrangement that provided for an hourly rate of $350, later reduced to $250 an hour, and, in an "evergreen" clause,[13] required Ms. Klein to provide a retainer of

---

[13] An "evergreen" clause providing for a retainer contemplates that the retainer is to remain funded at a certain level, with the debtor replenishing it as needed to maintain the original value. *In re GSB Liquidating Corp.*, No. 94 B 24672, 1995 WL 521528, at *14 n.13 (Bankr. N.D. Ill. Aug. 21, 1995) ("An 'evergreen' retainer mirrors the tree after which it was named. The debtor is responsible for replenishing the retainer after his attorney has drawn down or used that retainer for compensation for services rendered."); *see In re Pan American Hosp. Corp.*, 312 B.R. 706, 709 (2004) ("The evergreen retainer is yet another type of special retainer. The evergreen retainer agreement contemplates that the retainer shall remain intact and that the debtor's professionals' interim compensation shall be paid from the debtor's operating capital.").

$1,500 which would be replenished by her to maintain a minimum of $1,500, to cover fees, costs and expenses related to the matter.[14]

Ms. Klein paid the initial $1,500 as well as an additional $2,000, in two separate $1,000 payments, when Rand requested replenishment, without his ever having provided a bill which in any way reflected time spent. During the course of the representation, Ms. Klein took early retirement from the school because of stress and the mental and physical symptoms related to the job situation, without having been counseled by Rand about the possibility of a disability retirement.

Although Ms. Klein and Rand had also worked on drafting an addendum to her original complaint with the Equal Employment Opportunity Commission ("EEOC"), detailing specific instances of discrimination in addition to those earlier cited, Rand did

---

[14] The fee agreement contained the following, relevant, provisions:

> 1. Fees shall be based on time … No substantial work shall be performed before payment of a deposit ("retainer") toward fee (refundable if not earned) of $1,500.00, plus a non-refundable initial consultation fee of (N/A), payable prior to said consultation. Client understands that substantial Attorney time input, and therefore fees, must be expended as and when necessary. **Therefore, it is agreed that Client shall pay the Attorney those monies necessary, on a 30-day, as-billed basis to maintain the retainer at its original level.** …
>
> \*     \*     \*
>
> 5. Statement for services performed and costs advanced are due when rendered and Client agrees that in the event a statement remains unpaid for thirty (30) days, the Attorney shall be under no obligation to take any action on behalf of Client and may take action to withdraw his appearance from any court action and proof of nonpayment shall represent Client's consent thereto.

(emphasis in original)

8

not file the addendum, deciding unilaterally to incorporate it into a later response filed with the EEOC. Rand did not advise Ms. Klein of his decision regarding the addendum.

Ms. Klein, believing Rand was not giving sufficient attention to her matter, discharged him and requested both an invoice—having not received a single bill—and a copy of her file. Rand provided an enigmatic invoice, containing some duplicate entries, which demanded $11,230.00. Rand refused to provide Ms. Klein a copy of her file, and asserted an attorney retaining lien.[15]

After she discharged Rand, Ms. Klein hired new counsel to continue her attempts at mediation and conciliation with the EEOC and the school system, as she had received a determination from the EEOC that discrimination had occurred. After she filed a complaint with the Attorney Grievance Commission on April 15, 2013, Bar Counsel contacted Rand, and, over a protracted period, attempted to obtain data and documents

---

[15] We have defined attorney retaining liens as follows:

> Attorney's liens are categorized as either a retaining lien or a charging lien. See *Ashman v. Schecter*, 196 Md. 168, 173-74, 76 A.2d 139, 141-42 (1950) (noting that a charging lien binds a judgment recovered through the attorney's efforts, whereas a retaining lien is a general lien, dependent on possession, that gives an attorney the right to retain all papers, securities and money belonging to his client which comes into his possession until all his charges against his client are paid.). Under Maryland common law, attorneys do not have a charging lien, but a retaining lien is recognized. *See* Md. Rule 2-652(a); *Tucker v. Dudley*, 223 Md. 467, 472, 164 A.2d 891, 895 (1960). The charging lien has only been available in Maryland since 1985, when the General Assembly established a statutory attorney's lien. *See* 1985 Md. Laws, ch. 723; *Consolidated Construction Servs. v. Simpson*, 372 Md. 434, 460-61, 813 A.2d 260, 276 (2002).

*Rhoads v. Sommer*, 401 Md. 131, 148 n.12, 931 A.2d 508, 518 n.12 (2007).

from Rand regarding his representation of Ms. Klein. Those efforts continued until the morning of the first day of the disciplinary hearing, January 21, 2015.[16]

## I. Judge Bair's Findings of Fact and Conclusions of Law

Judge Bair issued, on March 6, 2015, Findings of Fact and Conclusions of Law in which he determined that Rand violated Rules 1.4, 1.5, 1.15(a), 1.16(d), 8.1(a) and (b), 8.4(a), (c) and (d), as well as Maryland Rule 16-606.1. Judge Bair's Findings of Fact and Conclusions of Law state: [17]

### Representation of Ms. Klein

Respondent received his undergraduate education at the University of North Carolina and his law degree from the University of Baltimore Law School. He was admitted to the Maryland Bar in December 1973 and is also licensed to practice law in the District of Columbia and before several federal courts. After serving three years as a Naval Officer, he worked from 1974 until 1980 as an Assistant County Attorney in Montgomery County. Since then, he has been in private practice in Rockville as a general civil trial practitioner. At all times relevant to this case, Respondent operated his law practice as a professional corporation in the name of McKernonRand, LLC.

In July 2011, Ms. Nancie Klein contacted Respondent to represent her in a case alleging discrimination claims against Montgomery County Public Schools ("MCPS"). Ms. Klein was referred to Respondent by another MCPS teacher whom Respondent had represented in a common-law tort matter involving MCPS. Ms. Klein was a psychologist in the county and had worked for MCPS as a teacher for 33 years. Ms. Klein, a white woman over 60 years old, was working at Takoma Park Elementary School, and believed the principal at the school had been engaging in age and racial discrimination. On July 26, 2011, at the initial meeting, Ms.

---

[16] On the morning of the first day of the disciplinary hearing, January 21, 2015, Rand provided several bank statements and canceled checks related to the issue of $300 that was shown as remaining in Ms. Klein's trust account on the date of his deposition, November 25, 2014.

[17] Internal record citations within the Findings of Fact have been omitted.

Klein executed a retainer agreement with Respondent. The agreement provided that Ms. Klein would pay Respondent at a rate of $350/hour with an initial retainer of $1,500. After the initial retainer amount, Ms. Klein was to pay Respondent "those monies necessary, on a 30-day, as billed basis to maintain the retainer at its original level."[1]

_____

[1] In December 2011, the hourly rate was reduced to $250/hour.

_____

At the time of this initial consultation, Respondent had handled approximately six Equal Employment Opportunity Commission ("EEOC") cases.

Ms. and Mr. Klein testified that, at the initial consultation, Respondent told them that the maximum liability for MCPS was $300,000 and that he expressed optimism that Ms. Klein's case would be worth an amount close to $300,000. Respondent denied valuing her case at $300,000, and testified that his fee agreement states that clients should disregard any value he places on a case. The retainer agreement states "I acknowledge that no representation, warranty or guarantee has been made as to what amount, if any, may be recovered in this case." Based on a review of all the evidence, and notwithstanding the provision in the retainer agreement, the Court does not find Respondent's testimony credible, and the Court accepts the testimony of Ms. and Mr. Klein.

On or about August 19, 2011, Ms. Klein filed a complaint with the EEOC. The narrative of the complaint was prepared by Respondent but was filed, at Respondent's suggestion, by Ms. Klein *pro se*. The EEOC failed to notify MCPS of the claim until on or about October 20 2011. While the EEOC case was still pending, the school year had begun and Ms. Klein was still experiencing discrimination. During the fall of 2011, Ms. Klein and Respondent were in communication about this continued discrimination. She repeatedly discussed with him the mental and physical symptoms she suffered as a result of the discrimination and discussed her plans to retire early. Respondent recommended that she hold off until the end of the school year, but that if she could only last until the end of the semester, they would "carry on from there." On November 30, 2011, Ms. Klein retired. Respondent testified that Ms. Klein never discussed her plans to retire prior to November 30, 2011, the date of her retirement. Based on a review of all the evidence, the Court finds the testimony of Ms. Klein more credible than that of Respondent and thus, the Court accepts the testimony of Ms. Klein.

In December 2011, Ms. Klein and Respondent began working on an addendum to be filed to the August EEOC complaint, which would include the additional discrimination that Ms. Klein faced in the fall of 2011. The circumstances surrounding the filing of this addendum was a significant focus of the hearing before the Court. On January 20, 2012, Ms. Klein emailed the Respondent with certain edits and additions to the addendum. The email stated "[w]hen it is ready [I] will sign it and let's get it on its way." On January 24, 2012, Ms. Klein emailed Respondent and asked, "[w]hen do you think [you] will be done with the final copy of the addendum and letter for the EEOC for my part?" On February 4, 2012, having not received any response, Ms. Klein again emailed Respondent stating, "[t]his is a second email about the addendum. I have one with my numbers and corrections. It does not look like the completed one. Would you please e-mail me the new addendum and hold off on sending it until I ok it?" Respondent provided an updated draft to Ms. Klein. On February 7, 2012, Ms. Klein emailed Respondent stating, "I received the letter and complaint. It looks great. There is one small error. In the letter, middle paragraph on the second page the number should be 5. Other than that — great. Please sign my name and send it off." Respondent never responded to this February 7th email. On February 23, 2012, having heard nothing from Respondent, Ms. Klein emailed him and asked: "[j]ust checking in on the addendum. Did you send it to the EEOC? If so, when was it received? How do we get the addendum actually attached to the original complaint? I don't want it going in as a separate complaint with an additional examiner and a 6 month lag in investigation." Ms. Klein did not recall whether Respondent responded to this email. Respondent never provided Ms. Klein a final copy of "what was filed." Based on the evidence provided, the Court finds that Respondent did not, in fact, *ever* file the addendum as instructed by Ms. Klein. Furthermore, Respondent did not advise Ms. Klein that the addendum had not been filed.

On March 28, 2012, the EEOC forwarded a copy of MCPS's position statement to Ms. Klein. Ms. Klein and Respondent worked together to draft a reply. On or about April 6, 2012, Respondent, signing Ms. Klein's name, filed a reply to MCPS's response to the complaint. Respondent included in the Reply information which he had led Ms. Klein to believe had been filed, by addendum, in February, and Ms. Klein did not know that the addendum she approved on February 7, 2012, had not been filed as of April 6, 2012.

On January 28, 2013, the EEOC issued its determination that Ms. Klein was harassed because of her age and race and invited the parties to join in conciliation. On February 6, 2013, Ms. Klein, Mr. Klein, and

Respondent met to discuss the conciliation process as well as an appropriate settlement number. Both Mr. and Ms. Klein testified that, at the February 6 meeting, they, along with Respondent, agreed that the value of Ms. Klein's case met or exceeded the $300,000 cap on MCPS claims. Respondent testified that he never mentioned the $300,000 cap to the Kleins. The Court does not find Respondent's testimony about the $300,000 figure credible, and the Court accepts the testimony of Ms. and Mr. Klein.

On March 7, 2013, Ms. Klein terminated Respondent's services as her attorney by sending him a letter. The letter stated that she was seeking other counsel "based on the fact that I believe you are not giving my case the attention it deserves, and using my case without my approval to benefit another client" and requested that he "cease and desist using the information pertaining to my case in any action you are taking on behalf of your other clients."[2]

_____

[2] Ms. Klein believed that Respondent had used the favorable determination in her case to leverage a case he was handling for another client (who worked with Ms. Klein) against MCPS and Takoma Park Elementary School. When Ms. Klein instructed Respondent to stop, he responded that because her case was a published public opinion he was free to use it. Respondent testified that this other client was brought to Respondent by Ms. Klein herself, and in fact he would have meetings with both clients together. Ms. Klein also testified at this other client's trial. Respondent's actions regarding his handling of the other client's case was not a subject of the Amended Petition.

_____

She further requested Respondent forward her file and "any other information pertaining to [her] case to her home." Respondent emailed a response on March 11, 2013, stating: "Your accusations of misconduct on my part are wholly unfounded, as you well know, and poor repayment for the difficult and painstaking work I performed for you to drive your improbable case to a favorable result." Respondent sent a follow-up letter on March 18, 2013:

> Rather to engage in a lengthy explanation of my reaction to your recent email and letter to me discharging me as your attorney and threatening me with suggestions of misconduct, let me simply give you the bottom line, and you may take whatever action you wish.

l. I accept that I am discharged as your attorney, which is your right. I deny any suggestion that I neglected your case, particularly so soon after winning it.

2. There has been no violation of your private or confidential legal matters. Further, while I am amazed that you are now attempting to tum your back on your friend, fellow teacher and co-client, your right to attempt to do so is limited. To the extent that your case is a matter of public record, it may be used as such, and you have no ability to forbid it. Your attempt to do so is particularly opprobrious in that your victory is the product of my achieving the vindication for you that you sought: it is wholly the result of my efforts on your behalf. Your lack of gratitude is stunning.

3. Our agreement was that I be paid hourly. While I kept time during your case, only a portion of it was billed for payment by you due to the necessity to dedicate many more hours to achieving victory that I believed should have been billed to a school teacher who was out of a job and had not yet won (and whose percentage-chances of winning were low)....

On March 22, 2013, Ms. Klein again requested a copy of her file. She stated: "I have been advised by my present attorney that I am entitled to copies of my file if I pay all copying charges. I will do so. I need ASAP both my signed EEOC charges, your contract and bills, and the March 17, 2012 rebuttal from MCPS. The rest of the file can wait until the following week. These files are absolutely necessary for me to continue on with the conciliatory mediation with the EEOC. If you would please e-mail me or call my husband [] when these documents are copied I would appreciate it. He will come by your office to pick up the documents and pay for copying." Respondent responded to the email, stating: "I disagree with your new attorney's analysis, and my retaining lien will remain in effect absent new facts not yet presented to me."

On March 28, 2013, Respondent sent an invoice and ledger to Ms. Klein charging her a total of $11,230. Ms. Klein estimated that she requested invoices from Respondent eight times during the course of the representation, and Respondent would say that they should let it ride and he would send bills. Respondent never gave an estimate of the current attorney fees, and the first invoice Respondent sent to Ms. Klein was the March 28, 2013 invoice. Respondent testified that Ms. Klein never made any requests for bills. The Court credits the testimony of Ms. Klein and finds that she did in fact request copies of her bills, and that the March 28, 2013 invoice was the first bill sent to her by Respondent.

14

Both Mr. and Ms. Klein stated that they replenished the initial $1,500 retainer with two checks, both for $1,000, on December 22, 2011 and January 19, 2012. Respondent's ledger also shows these payments. Respondent testified that the ledger's showing that a check had been deposited in January 2012 was made in error and that there was no deposit made on January 19, 2012. Based on all the evidence presented, the Court does not find Respondent's testimony that the Kleins never made the second $1,000 payment in January 2012 credible, and accepts the testimony of Mr. and Ms. Klein. Thus, when Ms. Klein received the March 28, 2013 invoice and ledger, she had already paid Respondent a total of $3,500.

Respondent also sent Ms. Klein an email on March 28, 2013 corresponding with the invoice; the email stated "your payments are not entirely credited, but I believe them to be approximately $4,000. I will accept $5,000 in full satisfaction...."

On April 2, 2013, Ms. Klein again requested a copy of her file and a complete copy of her bill. On April 9, 2013, Ms. Klein informed Respondent that MCPS was not interested in conciliation and requested information about the "mediation proposal." Respondent refused to provide Ms. Klein with the requested information, explaining, "I am disinclined to expend time in fielding your latest request." Respondent never provided Ms. Klein with copies of his communications with the EEOC or with the information that the EEOC valued her case at approximately $25,000. On April 15, 2013, he emailed her stating: "[p]lease advise in the next 24 hours if you intend to pay my outstanding fee, and if so, when."

On April 16, 2013, Ms. Klein emailed Respondent noting several duplications on the invoice. Additionally, the email stated: "you also billed me $75 on 2/11/2012 for correspondence with the EEOC. I have no knowledge or a copy of this correspondence- so I will not pay for it. Since your previous e-mail said you think my payments are approx. $4000 and I received no itemized bills for over a year I have no way to know if these charges are [legitimate] or not. I am not paying your bill. You keep threatening to place a lien on my suit so do what you will." Respondent never acknowledged these duplicate charges or provided Ms. Klein with his correspondence to the EEOC. However, Respondent acknowledged on the stand and in his Proposed Findings of Facts and Conclusions of Law that the ledger sent to Ms. Klein had errors and duplicate entries.

On January 3, 2014, Respondent sent a letter to Ms. Klein's new attorney, Alan Banov, Esquire, in response to Mr. Banov's letter requesting

that Respondent provide information and related documents regarding any settlement negotiations with MCPS. Respondent denied Mr. Banov's demand and stated that he was imposing a statutory lien on her file in the amount of $6,605, and that he was "only required to furnish the client with documents from the file which are *necessary* for the prosecution of her claim or defense." Respondent stated that information and documents concerning settlement negotiations "can hardly be classified as documents necessary for the prosecution of Ms. Klein's claim" because they are "settlement discussions" which are inadmissible, and this information/documentation is available from other sources.

## Bar Counsel Investigation

On April 15, 2013, Ms. Klein filed a complaint with the Attorney Grievance Commission. On April 26, 2013, Bar Counsel forwarded a copy of Ms. Klein's complaint to Respondent and in an accompanying letter, requested a written response to the complaint within fifteen days. On May 10, 2013, Respondent sent a letter to Bar Counsel in response to Ms. Klein's complaint. That letter included the following statements:
1. "I won her case (including an award of attorney's fees)..."
2. "Ms. Klein paid $4,000. . ." and
3. "When the EEOC ruled in her favor, it also ruled that I was entitled to attorneys fees."

The letter conveys that Respondent believes Ms. Klein's complaint arises out of a fee dispute. Although Respondent testified at trial and wrote in his Proposed Findings of Fact and Conclusions of Law that he was incorrect when he stated Ms. Klein had paid him $4,000, Respondent was somewhat unclear as to when in fact he came to the realization that he was incorrect.

On May 21, 2013, Bar Counsel forwarded a copy of Respondent's May 10, 2013 letter to Ms. Klein and requested her written comments. On May 27, 2013, Ms. Klein provided additional information in a letter. In a letter dated June 11, 2013, Bar Counsel requested that by June 28, 2013, Respondent provide comments in reply to Ms. Klein's letter as well as:
1. A copy of his retainer agreement with Ms. Klein;
2. Copies of all records created and maintained pursuant to Maryland Rule 16-606.1 for the receipt, maintenance and disbursement of Ms. Klein's funds;
3. Copies of all correspondence between himself and Ms. Klein including all email correspondence; and

4. Any and all documentation to support the billing entries in the undated "Client Ledger" provided to Bar Counsel by Ms. Klein including but not limited to copies of all correspondence related to the representation of Ms. Klein, notes of all telephone conversations or meetings relating to the representation of Ms. Klein and all filings.

On June 28, 2013, Respondent sent the following letter to Bar Counsel, reproduced in full:

As you know, your list entails more than everything concerning the fee in her case (e.g. IOLTA account records, original time sheets, all email traffic, etc.). I am certain that a thorough adherence to your list would take six to ten hours of my time to compile, which, as you no doubt know, is far more than the balance due from Ms. Klein.

Your request is not reasonable, because it is facially excessive and has no factual basis in the issues raised by the Complainant in her correspondence to you regarding the matter. Further, this matter is patently a fee dispute, and it is your well-publicized policy not to be involved in fee disputes. Again, you have made an exception to your policies where I am involved.

Indicative of the excessiveness and oppressiveness of your demand is that you do not even allow me the 30 days to produce documents that are afforded to an actual litigant seeking Production of Documents under the Rules. And you are not a litigant; you appear to be a regulatory agency without enough 'factual basis' to initiate a lawsuit were you in this case a private party, without danger running afoul of Rule l-341. Further, your demand that this voluminous documentation be produced in half the time allowed to litigants in fact requires that I 'drop everything' and rush to comply. In this regard, I only received your letter when I returned from a week's vacation on June 17, 2013. I had a very significant trial for which to prepare on June 24, 2013 (for which I was required to dedicate every available working hour, including the entire weekend), and the usual array of remaining and new matters which inevitably a solo practitioner must address upon his return to work.

17

I am acutely aware of the legally impregnable position your agency holds: once you commence to investigate or charge a practitioner (apparently reserved for solos only — never large firms), there are no counterclaims, or injunctions or even allowable motions to dismiss or other usual means available to mitigate the onslaught you visit upon us.

This situation is aggravated by the fact that there is no realistic 'Internal Affairs' division to regulate arbitrary, capricious, unlawful and/or vindictive conduct by your agency. Indeed, there is realistically no one to whom to complain except perhaps the Court of Appeals or the Governor, neither of which could arguably be thought of as a 'hands-on' arbiter of the conduct of your agents' activities.

And, of course, your power to discipline and/or disbar attorneys is ever-present: I note that you were not hesitant to advise me in the last paragraph of your letter that you hold the power to discipline/disbar me if I fail to respond timely pursuant to Rule 8.1.

You indeed have the ever-present power to take away the right to earn a livelihood of a practitioner who has always invested no less than three years of his/her life in obtaining a license to practice law, or in my case more than forty. And my far-too broad experience with you has made it clear that you are not bashful about threatening practitioners (solos a specialty), and carrying out those threats regardless of the validity, vel non, of the charges and the dire consequences that they bring to the lives of the innocent and/or honest attorneys—'that isn't your problem, you're just doing your job'.

You have seen fit to charge me personally with misconduct so often in the last five years that I have no question that I am the most-prosecuted practitioner in the history of the legal profession in the State of Maryland. I hold that dubious distinction only because your "nuanced" charges have never been found to be valid; therefore, I have been able to get off the canvas repeatedly, only to be greeted by more of your serial Sunday punches.

18

You have seen fit to bring public charges of misconduct against me twice in these five years to be tried to judges of the court before which I primarily practice. Dissatisfied with the "foot faults" each trial judge found, you filed appeals to Maryland's highest court, inevitably demanding more of my professional flesh. In both those proceedings I was found *not* to have engaged in misconduct. However, in those two proceedings, along with several other prosecutions of lesser reach, you have managed to cost me hundreds of thousands of dollars, untold clients and have destroyed, most critically, my reputation before my peers, my bench and the public. In short, you have dramatically interfered with my right to make a living as an honest attorney, and be left alone by you.

It is in light of this administrative apparatus and personal history with you that I have concluded, at my peril, that your demand for 'information' is unreasonable and therefore invalid. However, in recognition of my duty to respond and to disclose under Rule 8.1, I will allow you or your investigator to come to my office, by agreed-upon appointment, to examine the subject case file and such other items for which you can demonstrate some articulable 'probable cause'.

Please do not regard this letter as the opening of a negotiation: this is my response to you. If you take the position that this letter does not constitute 'substantial compliance,' please advise so that such may become the grist of an action for Declaratory Judgment.

On August 26, 2013, Bar Counsel sent a letter to Respondent advising him that Ms. Klein's complaint had been docketed for further investigation and asking "that you reconsider your position and provide me with the information and documentation I requested in my letter of June 11, 2013 within fifteen (15) days. My investigator, William M. Ramsey, will be in touch with you in the near future to make arrangements to pick up the requested documentation if you are unable to deliver it to our office....You are also advised that the Maryland Rules of Professional Conduct 8.1 provides that a lawyer, in connection with a disciplinary matter, shall not knowingly fail to respond to a lawful demand for information by a disciplinary authority."

On September 9, 2013, Respondent requested an extension of time to "formulate [his] response." On September 11, 2013, Bar Counsel granted

Respondent's request for an extension and requested the information and documentation be provided no later than September 30, 2013. On September 30, 2013, Respondent requested a second extension, stating that his schedule had "precluded [his] finalizing a reasonable response." Bar Counsel granted Respondent's request for a second extension on October 8, 2013.

On October 11, 2013, Respondent mailed Bar Counsel a letter stating that he had "taken the entire file to the printer and it will be here for pickup by your Investigator from this point forward. If you do not believe this is an adequate response, please contact me." Sometime around late October or early November 2013, a representative from Bar Counsel came and picked up Ms. Klein's client file; no bank statements had been produced, but the ledger was included in the file. On May 9, 2014, Respondent finally provided some bank statements for "months that showed every transaction on the client ledger that had been made with her escrow money," cancelled checks, and deposit slips. Respondent did not provide all bank records for the entire time Ms. Klein was his client, but stated that he believed that providing the ledger was sufficient to comply with Bar Counsel's request for "all records created and maintained pursuant to [Maryland Rule 16-606.1]."

On November 25, 2014, Petitioner's counsel took Respondent's deposition. During his deposition, Respondent agreed to provide additional documentation related to Ms. Klein's funds; namely, documentation evidencing whether there remained $300 of Ms. Klein's funds in trust or whether the funds had been withdrawn. Besides that information, Respondent believed he had provided all documents relating to Maryland Rule 16-606.1 and MLRPC 1.15. On the morning of trial, January 21, 2015, Respondent provided selected additional bank account statements.

The Conclusions of Law made by Judge Bair were as follows:[18]

In its Amended Petition for Disciplinary or Remedial Action, Bar Counsel alleged the following six violations of the Maryland Lawyers' Rules of Professional Conduct ("MLRPC") and Attorney Trust Account Record Keeping: (A) Rule 1.4 Communication; (B) Rule 1.5 Fees; (C) Rule 1.15(a) Safekeeping Property and Maryland Rule 16-606.1 Attorney Trust Account Record-Keeping; (D) Rule 1.16(d) Declining or Terminating

---

[18] Internal record citations and Maryland Rules, where indicated, in the Conclusions of Law have been omitted.

Representation; (E) Rule 8.1(a) and (b) Bar Admission and Disciplinary Matters; and (F) Rule 8.4 (a), (c) and (d) Misconduct.[3]

---

[3] In its Amended Petition for Disciplinary or Remedial Action, Petitioner charged seven separate rule violations, but the Court is combining the violations of MLRPC Rule 1.15(a) Safekeeping Property and Maryland Rule 16-606.1 Attorney Trust Account Record-Keeping into one alleged violation under subpart C, for a total of six separate categories of violations.

---

## A. MLRPC Rule 1.4. Communication

[Rule omitted]

Respondent violated MLRPC Rule 1.4(a-b) in three ways. First, Respondent failed to provide Ms. Klein with periodic invoices about his attorney fees and he also failed to request replenishment of his retainer. The retainer agreement signed by Ms. Klein states that she was to pay Respondent "those monies necessary, on a 30-day, as billed basis to maintain the retainer at its original level." As stated *supra*, the Court credits the testimony of Mr. and Ms. Klein and found that Ms. Klein requested invoices between seven and eight times during the course of the representation. Moreover, at Respondent's deposition, he testified "Oh, I don't think so. Pretty sure she didn't. I don't know," in response to whether Ms. Klein had requested an invoice. At trial however, Respondent testified that Ms. Klein never requested a bill from him. The Court found that Ms. Klein provided two additional payments of $1,000 to Respondent, for a total payment of $3,500 before Respondent sent her the first invoice billing her for over $11,000. By failing to provide any monthly statements when requested and failing to request replenishment as needed, Respondent violated MLRPC Rule 1.4 Communication. *Attorney Grievance Comm'n of Md. v. Calhoun*, 391 Md. 532, 569 (2006) (finding that sending out monthly statements that simply stated what the client owed without providing further details was a violation of MLRPC Rule 1.4).

Second, Respondent violated MLRPC Rule 1.4(a)(2) with respect to his failure to file the addendum to Ms. Klein's original complaint. In December 2011, Respondent and Ms. Klein began drafting an addendum to her original complaint. On February 7, 2012, Ms. Klein approved the final draft and instructed Respondent to "please sign my name and send [the addendum] off." Respondent did not follow Ms. Klein's instruction and

failed to inform her that the addendum had not been filed. On February 23, 2012, Ms. Klein requested information about the addendum from Respondent. Respondent failed to respond in any manner to Ms. Klein's requests for information. While the addendum was eventually incorporated by Respondent into Ms. Klein's response to MCPS and filed on or about April 6, 2012, Respondent never communicated with Ms. Klein that the addendum had not been filed in February and failed to provide her with the requested information about the procedure associated with filing the addendum.

Third, the Court finds the Respondent violated Rule 1.4(b) when he failed to communicate with Ms. Klein about potential ramifications of her early retirement in the fall of 2011. Specifically, he failed to advise her about the option of taking medical retirement or filing a claim for constructive discharge.

Although it appears that Ms. Klein and Respondent did communicate frequently during the course of the representation, that does not negate Respondent's violations of Rule 1.4 in that he failed to provide Ms. Klein with invoices, he failed to file a timely addendum, and he failed to advise Ms. Klein about the ramifications of her retirement or potential constructive discharge claim.

## B. MLRPC Rule 1.5. Fees

[Rule omitted]

The Court finds that Respondent violated MLRPC Rule 1.5(a) when he failed to provide Ms. Klein invoices and failed to request sufficient replenishment of his retainer, despite both being required in his retainer agreement and by repeated requests for invoices from Ms. Klein. MLRPC Rule 1.5 prohibits lawyers from charging unreasonable fees. The Rule provides a list of non-exclusive factors to consider when determining the reasonableness of fees. The Court of Appeals noted that it is not necessary to prove that the total fee sought was unreasonable in order to find a violation of the rule. *Attorney Grievance Comm'n of Md. v. Green*, 441 Md. 80, 92 (2014) (finding that the attorney's fees were unreasonable and that the attorney violated MLRPC Rule 1.5 by failing to provide monthly invoices and failing to request the replenishing retainer).

## C. MLRPC Rule 1.15. Safekeeping Property, and Maryland Rule 16-606.1. Attorney Trust Account Record-Keeping

[Rule omitted]

[Rule omitted]

The Court finds that Respondent did not create and maintain records required by Maryland Rule 16-606.1(a)(2) and (a)(3) and thus, Respondent is in violation of MLRPC Rule 1.15(a). At Respondent's deposition, the following colloquy took place:

> <u>Bar Counsel Question</u>: ....we charged in the petition a recording keeping violation of Rule 16-606.1 and the Rule 1.15, the safekeeping rule that accompanies that. And I just want to make sure that I have everything that's related to the receipt, maintenance, and disbursement of [Ms.] Klein's funds as discussed with you of June 11th, 2013, which is Deposition Exhibit No. 8. And just so that you're clear, I have the three bank statements and accompanying documents that have been marked as Deposition Exhibits No. 9, 10, and 11, and then I have the three versions of the invoices that we've discussed, the most up to date or the last one being the April 3rd, 2013 invoice.
> <u>Respondent Answer</u>: Well, you know, I owe you the answer on $300 and whether it remains. That you don't have, clearly. The other stuff, I think you got. The sequence of events is you asked for all this stuff. I sent you the billing invoice which does have all of that. The backup to all of that, as far as I'm concerned, is prima facie compliance. And then, you know, I gave you all the backup that I thought was reasonable in Exhibits 9, 10, and 11. So you know, I thought I gave you everything.

Additionally, when questioned about the source of his representation to Bar Counsel that Ms. Klein had paid him $4,000, he stated that the number came from his "recollection."

At trial, Respondent testified that his software program, PCLaw, generates reports which have "all the activity, financial, as well as time input. . ." for each client. Respondent also represented that the client ledger from the PCLaw program is "always the same" and that once the entries are made they cannot change, but the Court notes that when comparing the ledgers for the same client printed on different days, there was in fact different information. Moreover, Respondent stated that he did not incorporate bank statements into Ms. Klein's file.

As discussed *supra*, Respondent acknowledged he was incorrect in his initial assertion that the Kleins had paid him $4,000. At trial, the Kleins testified that they believed they had paid the Respondent a total of $3,500. The Respondent testified that the Kleins paid him a total of $2,500. Had Respondent kept more accurate records that included bank statements, he would not have needed to rely on his incorrect recollection. The Court finds the Kleins' testimony to be more credible than the Respondent's. Additionally, had the records been properly kept, there would not have been duplicate charges, or at the very least Respondent would have realized his errors sooner. By failing to keep complete and accurate records, Respondent is in violation of Maryland Rule 16-606.1.

**D. MLRPC Rule 1.16. Declining or Terminating Representation**

[Rule omitted]

"When a client requests his or her file from an attorney at the end of the representation, MLRPC 1.l6(d) requires the attorney to surrender the portions of the file (or a copy) to which the client is entitled (assuming no proper charging lien exists)" *Attorney Grievance Comm'n of Md. v. Brown*, 426 Md. 298, 322 (2012). Maryland Rule 2-652(a) provides that except as otherwise provided under the Maryland Lawyers' Rules of Professional Conduct, "an attorney who has a common-law retaining lien for legal services rendered to a client may assert the lien by retaining the papers of the client in possession of the attorney until the attorney's claim is satisfied."

The Court finds Respondent violated MLRPC Rule 1.16(d) when he failed to provide Ms. Klein with her file upon his termination. While Respondent asserts that he had a retaining lien on Ms. Klein's file, the Court notes that this does not give Respondent an absolute right to retain Ms. Klein's file. Even if Respondent had a valid lien, the "mere existence of a legal right does not entitle a lawyer to stand on that right if ethical considerations require that he forego it" and the Court "will not countenance in a disciplinary proceeding such a self-help argument for vigilante lawyers who decide to take disputes over attorney's fees into their own hands." *Attorney Grievance Comm'n of Md. v. Sheridan*, 357 Md. 1, 35 (1999) (where lawyer had taken client funds and used them for personal or professional use) (internal citations omitted). As discussed *supra*, Respondent failed to comply with both MLRPC Rule 1.5(a), because he failed to provide Ms. Klein with invoices or requests to replenish the retainer, and MLRPC Rule 1.15(a) because Respondent failed to keep

proper records in accordance with Maryland Rule 16-606.1. Where Respondent failed to provide invoices and failed to keep proper billing records for this client, Respondent could not then assert a retaining lien on her file based on his questionable billing practices.

Moreover, upon Respondent's termination, the potential for mediation or conciliation was pending in Ms. Klein's case. Thus, Ms. Klein was entitled to all information that Respondent had received from the EEOC related, in any way, to the pending conciliation process. An attorney may be required to turn over such papers, or photocopies thereof, to the client or successor counsel to enable an ongoing action to go forward. *See Pomerantz v. Schandler*, 704 F.2d 681 (2d Cir. 1983); *Upgrade Corp. v. Michigan Carton Co.*, 410 N.E.2d 159 (Ill. App. Ct. 1980); *Frenkel v. Frenkel*, 599 A.2d 595 (N.J. Super. Ct. App. Div. 1991); *Rosen v. Rosen*, 97 A.D.2d 837 (N.Y. App. Div. 1983); *Fleming v. Bernauer*, 138 Misc. 2d 267 (N.Y. Sup. Ct. 1987); *M.E. v. S.G.*, 124 Misc. 2d 851 (N.Y. Fam. Ct. 1984); *People v. Altvater*, 78 Misc. 2d 24 (N.Y. Sup. Ct. 1974). This would include the complaint Ms. Klein had filed *pro se*, MCPS's response, and her reply, also submitted *pro se*. Ms. Klein was not in possession of final drafts of the complaint or reply and did not have a copy of MCPS's response when she terminated Respondent's services.

**E. MLRPC Rule 8.1. Bar Admission and Disciplinary Matters**

[Rule omitted]

Respondent admitted that he made misrepresentations to Bar Counsel. He admitted that he misrepresented the amount of money paid to him. Second, Respondent admitted that it was an "exaggeration" that he was awarded attorney's fees by the EEOC. Indeed, he was *not* awarded attorney's fees. Finally, Ms. Klein wrote to Bar Counsel that it was a "combination of gross exaggeration of the facts and blatant lies" for Respondent to claim he "won" her case. According to Ms. Klein, she received a ruling in favor from the EEOC that supported her discrimination case against the EEOC and the case was ongoing. The Court finds these misrepresentations by Respondent were material and made knowingly. The Court therefore concludes that each misrepresentation constitutes a violation of Rule 8.1(a).

Additionally, Respondent violated MLRPC Rule 8.1(b) when he knowingly and intentionally failed to respond to Bar Counsel's requests for information. The Court notes that "a request for information by Bar Counsel does not have to come in any particular form in order to trigger the

25

compliance requirements of MRPC 8.1." *Attorney Grievance Comm'n of Md. v. Khandpur*, 421 Md. 1, 12 (2011). Respondent's response on June 28, 2013, states: "in recognition of my duty to respond and to disclose under Rule 8.1, I will allow you or your investigator to come to my office, by agreed-upon appointment, to examine the subject case file and such other items..." Despite Respondent's assertion that making the file available to Bar Counsel was compliance with Rule 8.1(b), the Court disagrees. *See Attorney Grievance Comm'n of Md. v. Tanko*, 427 Md. 15, 35-36 (2012) (overruling Respondent's exception that he had violated Rule 8.1); *Attorney Grievance Comm'n of Md. v. James*, 385 Md. 637, 651-52, 654, 658-59 (2005). Moreover, although Respondent did send letters back to Petitioner, the letters mostly contained inflammatory accusations against Petitioner and, as stated *supra*, did not include any documents. When Petitioner ultimately picked up Ms. Klein's file, the file did not contain any of the bank records required by Rule 16-606.1. *See Attorney Grievance Comm'n of Md. v. Fraidin*, 438 Md. 172, 185, 200 (2014). Respondent finally provided *some* records at his deposition on November 25, 2014, and then additional documents the morning of trial, January 21, 2015, long after the investigatory phase by Bar Counsel had ended.

## F. MLRPC Rule 8.4. Misconduct

[Rule omitted]

MLRPC Rule 8.4(a) is subsumed by the other violations of the Maryland Lawyers' Rules of Professional Conduct, as found by the Court. Having concluded that Respondent violated some of these rules, the Court concludes that Respondent also committed a violation of Rule 8.4(a). *See Attorney Grievance Comm'n of Md. v. Foltz*, 411 Md. 359, 411 (2009).

Additionally, the MLRPC Rule violations are also a violation of Rule 8.4(c). The Court of Appeals has found that dishonesty encompasses conduct which shows a lack of honesty, probity or integrity of principle, a lack of fairness and straightforwardness. *See Attorney Grievance Comm'n of Md. v. Thomas*, 440 Md. 523, 555 (2014). Thus, "what may not legally be characterized as an act of fraud, deceit or misrepresentation may still evince dishonesty." Moreover, Respondent's mishandling of Ms. Klein's client funds by failing to provide invoices or keep accurate accounting records, as well as his misrepresentations to bar counsel, were both prejudicial to the administration of justice under MLRPC 8.4(d). *See Attorney Grievance Comm'n of Md. v. Brigerman*, 441 Md. 23, 40 (2014); *Attorney Grievance Comm'n of Md. v. Mungin*, 439 Md. 290, 315 (2014). Finally, Respondent's failure to comply with his former client's requests

for papers following termination obstructed and delayed her ability to pursue her claim through new counsel.

Judge Bair also made findings as to mitigating and aggravating factors:

> Maryland Rule 16-757(b) provides that at a disciplinary hearing, "[a] respondent who asserts an affirmative defense or a matter of mitigation or extenuation has the burden of proving the defense or matter by a preponderance of the evidence." At the hearing on January 21 and 22, 2015, Respondent presented no affirmative defenses or any matters of mitigation or extenuation.

> On January 26, 2015, however, the Respondent filed a request for judicial notice. He filed a corrected request on January 28, 2015. Petitioner filed a Response to Defendant's Request for Judicial Notice on February 3, 2015. In Respondent's motion, he noted that "whether and how Respondent answered [Ms. Klein's] email inquiries concerning the Addendum....became an issue." Respondent attached docket entries to his motion that show that during the time of these emails correspondence "Respondent was fully involved in defending himself against AGC's accusations throughout the period in question." According to Respondent, "it can be at least understood to some extent why written responses to Complainant Klein regarding these two inquiries were not made," and thus, Respondent requested that the Court take judicial notice of the attached docket entries.

> The Court denied Respondent's Request for Judicial Notice. With this motion, Respondent was attempting to enter possible mitigating factors into evidence after the trial had completed. The Court notes that the trial was a two-day trial, where Respondent's counsel made a closing argument on January 22, 2015. At no time did Respondent request that he be permitted to submit additional information or evidence. Moreover, no form of the word "mitigate" is contained in the transcript across both trial days. The Court finds that the Respondent has not proven any mitigating or extenuating circumstances.

> The Court of Appeals has identified certain aggravating factors that the Court considers in attorney discipline matters: (a) prior disciplinary offenses; (b) dishonest or selfish motive; (c) pattern of misconduct; (d) multiple offenses; (e) bad faith obstruction of the attorney disciplinary proceeding by intentionally failing to comply with rules or orders of the Commission; (t) submission of false evidence, false statements, or other deceptive practices during the attorney disciplinary proceeding; (g) refusal

27

to acknowledge wrongful nature of conduct; (h) vulnerability of the victim; (i) substantial experience in the practice of law; (j) indifference to making restitution; and (k) illegal conduct, including that involving the use of controlled substances. *Attorney Grievance Comm'n of Md. v. Zhang*, 440 Md. 128, 171-72 (2014), <u>reconsideration denied</u> (Aug. 27, 2014).

Factor (a), prior disciplinary offenses, is present in this case, to an extent. Respondent received a reprimand from Bar Counsel in May 2012 relating to his personal bankruptcy filings "in which he included unverified and inaccurate information, some of which [were] offered under the penalty of perjury." *Attorney Grievance Comm'n of Md. v. Rand*, 429 Md. 674, 724 (2012) (Harrell, J., dissenting). In December, 2012, a petition against Respondent was dismissed because the Court of Appeals found that there was not clear and convincing evidence that Respondent had violated MLRPC Rule 1.4 Communication. Respondent also had an earlier petition against him dismissed when the Court found Respondent's delay in returning records to opposing counsel was not prejudicial to the administration of justice under MLRPC 8.4(d). *Attorney Grievance Comm'n of Md. v. Rand*, 411 Md. 83, 95-96 (2009).

The case at issue involves multiple offenses implicating factor (d). The Respondent engaged in bad faith obstruction of the disciplinary proceeding by failing to comply with lawful requests for information, failing to timely comply with lawful requests for information, and making misrepresentations to Bar Counsel during the course of its investigation implicating factor (t). Finally, the Respondent has refused to acknowledge wrongful nature of conduct implicating factor (g) and has substantial experience in the practice of law implicating factor (i).

## II. Standard of Review

We recently again articulated our oft-cited standards for reviewing attorney disciplinary proceedings in *Attorney Grievance v. Hodes*, 441 Md. 136, 168, 105 A.3d 533, 552 (2014) as:

This Court has original and complete jurisdiction over attorney discipline proceedings in Maryland. We conduct an independent review of the record and we accept the hearing judge's findings of fact unless shown to be clearly erroneous. Under our independent review of the record, we must determine whether the findings of the hearing judge are based on clear and

convincing evidence. With respect to exceptions, upon our review of the record, the hearing judge's findings of fact generally will be accepted unless they are clearly erroneous. A hearing judge's factual finding is not clearly erroneous if there is any competent material evidence to support it. As to the hearing judge's conclusions of law, such as whether provisions of the Maryland Rules of Professional Conduct were violated, our consideration is *de novo*.[19]

(internal citation omitted) (internal quotation omitted).

Bar Counsel did not file any exceptions to Judge Bair's findings of fact or conclusions of law. Rand filed exceptions both to Judge Bair's findings of fact and his conclusions of law, suggesting that disciplinary action was not warranted, that his conduct did not violate the Maryland Rules of Professional Conduct and that we should dismiss this case.

### III. Rand's Exceptions to Findings of Fact

We will address Rand's exceptions to Judge Bair's findings of facts seriatim.

Rand first excepts to Judge Bair's finding that he "did not, in fact, ever file the addendum as instructed by Ms. Klein." Regarding the filing of the addendum, Judge Bair found:

> In December 2011, Ms. Klein and Respondent began working on an addendum to be filed to the August EEOC complaint, which would include the additional discrimination that Ms. Klein faced in the fall of 2011. The circumstances surrounding the filing of this addendum was a significant focus of the hearing before the Court. On January 20, 2012, Ms. Klein emailed the Respondent with certain edits and additions to the addendum. The email stated "[w]hen it is ready [I] will sign it and let's get it on its way." On January 24, 2012, Ms. Klein emailed Respondent and asked,

---

[19] Rule 16–759(b)(1) provides:
> The Court of Appeals shall review *de novo* the circuit court judge's conclusions of law.

"[w]hen do you think [you] will be done with the final copy of the addendum and letter for the EEOC for my part?" On February 4, 2012, having not received any response, Ms. Klein again emailed Respondent stating, "[t]his is a second email about the addendum. I have one with my numbers and corrections. It does not look like the completed one. Would you please e-mail me the new addendum and hold off on sending it until I ok it?" Respondent provided an updated draft to Ms. Klein. On February 7, 2012, Ms. Klein emailed Respondent stating, "I received the letter and complaint. It looks great. There is one small error. In the letter, middle paragraph on the second page the number should be 5. Other than that — great. Please sign my name and send it off." Respondent never responded to this February 7th email. On February 23, 2012, having heard nothing from Respondent, Ms. Klein emailed him and asked: "[j]ust checking in on the addendum. Did you send it to the EEOC? If so, when was it received? How do we get the addendum actually attached to the original complaint? I don't want it going in as a separate complaint with an additional examiner and a 6 month lag in investigation." Ms. Klein did not recall whether Respondent responded to this email. Respondent never provided Ms. Klein a final copy of "what was filed." Based on the evidence provided, the Court finds that Respondent did not, in fact, *ever* file the addendum as instructed by Ms. Klein. Furthermore, Respondent did not advise Ms. Klein that the addendum had not been filed.

In support of his exception, Rand argues that Ms. Klein did not complain about a lack of communication with respect to the addendum, "not in her initial complaint, in her subsequent letter of response to Respondent, or in her testimony." He further asserts that Judge Bair's later acknowledgment that, "Respondent included in the Reply information which he had led Ms. Klein to believe had been filed, by addendum, in February….", evidences that the addendum was in fact filed.

Ms. Klein testified during the hearing that she made several requests both by e-mail and by letter to Rand requesting information on the status of the addendum and whether it had been filed, and received no response. She directed Rand in an e-mail February 7, 2012, to "Please sign my name and send [the addendum] off." When pressed

by Bar Counsel during the hearing about his lack of an independent recollection of how the addendum was filed, Rand stated "It's not filed." Rand did not file the addendum separately, as Ms. Klein instructed, but, instead, unilaterally incorporated it into a response sent on April 6, 2012, without discussion with Ms. Klein. Judge Bair's finding that Rand did not file the addendum as instructed by Ms. Klein was supported by clear and convincing evidence, and we overrule Rand's exception.

Rand next excepts to the finding that he "failed to advise Ms. Klein about the ramifications of her retirement or potential constructive discharge, prior to November 30, 2011." Judge Bair found:

> During the fall of 2011, Ms. Klein and Respondent were in communication about this continued discrimination. She repeatedly discussed with him the mental and physical symptoms she suffered as a result of the discrimination and discussed her plans to retire early. Respondent recommended that she hold off until the end of the school year, but that if she could only last until the end of the semester, they would "carry on from there." On November 30, 2011, Ms. Klein retired. Respondent testified that Ms. Klein never discussed her plans to retire prior to November 30, 2011, the date of her retirement.

During the hearing, Ms. Klein testified:

> [Bar Counsel]: And did Mr. Rand provide you with any advice about your retirement?
>
> [Ms. Klein]: Oh, he told me it would be better if I could hold off until the end of the year, and retire then. And I said, you know, as we discussed, I, I can't hold off until the end of the year; I can make a semester, that's it. And he said, well, if you have to retire, retire, and we'll carry on from there.
>
> [Bar Counsel]: Did he give you any advice on how to retire?
>
> [Ms. Klein]: No.

31

[Bar Counsel]: And were there different options available to you as to how to retire?

[Ms. Klein]: There was a different option, which was medical retirement, which I, I could have taken but I did not know about it at the time; all I knew about was standard retirement.

Rand, however, insists that Ms. Klein did not seek advice concerning her retirement or the option of medical retirement prior to November 30, 2011.

Judge Bair, assessing both the testimony of Ms. Klein and Rand, found Ms. Klein's testimony to be more credible regarding Mr. Rand's discussion with her about her retirement. We have stated that the hearing judge "is in the best position to assess first hand a witness's credibility", *Attorney Grievance v. Sheridan*, 357 Md. 1, 17, 741 A.2d 1143, 1152 (1999), and "it is elementary that the judge 'may elect to pick and choose which evidence to rely upon.'" *Id.*, quoting *Attorney Grievance Comm'n v. Kemp*, 303 Md. 664, 675, 496 A.2d 672, 677 (1985). Accordingly, we overrule Rand's exception.

Rand next excepts to the finding that he "failed to provide Ms. Klein invoices and failed to request sufficient replenishment of his retainer, despite both being required in his retainer agreement and by repeated requests for invoices from Ms. Klein." Judge Bair found, specifically:

On March 28, 2013, Respondent sent an invoice and ledger to Ms. Klein charging her a total of $11,230. Ms. Klein estimated that she requested invoices from Respondent eight times during the course of the representation, and Respondent would say that they should let it ride and he would send bills. Respondent never gave an estimate of the current attorney fees, and the first invoice Respondent sent to Ms. Klein was the March 28, 2013 invoice. Respondent testified that Ms. Klein never made any requests for bills. The Court credits the testimony of Ms. Klein and finds that she did

32

in fact request copies of her bills, and that the March 28, 2013 invoice was the first bill sent to her by Respondent.

Both Mr. and Ms. Klein stated that they replenished the initial $1,500 retainer with two checks, both for $1,000, on December 22, 2011 and January 19, 2012. Respondent's ledger also shows these payments. Respondent testified that the ledger's showing that a check had been deposited in January 2012 was made in error and that there was no deposit made on January 19, 2012. Based on all the evidence presented, the Court does not find Respondent's testimony that the Kleins never made the second $1,000 payment in January 2012 credible, and accepts the testimony of Mr. and Ms. Klein. Thus, when Ms. Klein received the March 28, 2013 invoice and ledger, she had already paid Respondent a total of $3,500.

Ms. Klein testified that she had made requests for bills and invoices from Rand, both by phone and in person, "maybe seven, eight times." Rand testified that he did not send any bills or invoices to Ms. Klein during the course of representation.

Ms. Klein also testified that on two separate occasions Rand requested additional funds for his retainer, but did not provide an invoice or billing statement at the time of the request, although the fee agreement between Ms. Klein and Rand stated, in relevant part:

1. Fees shall be based on time …

\* \* \*

**Therefore, it is agreed that Client shall pay the Attorney those monies necessary, on a 30-day, as-billed basis to maintain the retainer at its original level.** It is further understood that four months prior to the trial of your matter, and from time to time thereafter as circumstances dictate, the retainer balance will be adjusted to reflect the Attorney's estimate of full trial fees, costs and expenses.

\* \* \*

5. Statement for services performed and costs advanced are due when rendered and Client agrees that in the event a statement remains unpaid for thirty (30) days, the Attorney shall be under no obligation to take any action

33

on behalf of Client and may take action to withdraw his appearance from any court action and proof of nonpayment shall represent Client's consent thereto.

Judge Bair's findings were based on clear and convincing evidence and supported by the record and we, therefore, overrule this exception.

Rand excepts to the finding that "Respondent did not create and maintain records required by Maryland Rule 16-606.1(a)(2) and (a)(3)." Judge Bair, in relevant part, found:

> At trial, Respondent testified that his software program, PCLaw, generates reports which have "all the activity, financial, as well as time input. . ." for each client. Respondent also represented that the client ledger from the PCLaw program is "always the same" and that once the entries are made they cannot change, but the Court notes that when comparing the ledgers for the same client printed on different days, there was in fact different information. Moreover, Respondent stated that he did not incorporate bank statements into Ms. Klein's file.

> As discussed *supra*, Respondent acknowledged he was incorrect in his initial assertion that the Kleins had paid him $4,000. At trial, the Kleins testified that they believed they had paid the Respondent a total of $3,500. The Respondent testified that the Kleins paid him a total of $2,500. Had Respondent kept more accurate records that included bank statements, he would not have needed to rely on his incorrect recollection. The Court finds the Kleins' testimony to be more credible than the Respondent's. Additionally, had the records been properly kept, there would not have been duplicate charges, or at the very least Respondent would have realized his errors sooner.

Rand argues that the PCLaw program he used to maintain client ledgers is *prima facie* compliant with Rule 16-606.1, that his records "fully account for every cent paid" by Ms. Klein and that the duplicate entries and late addition of a $300 trust account disbursement were simply clerical errors. Received in evidence was a ledger for Ms. Klein's case

34

printed on January 20, 2015 that included entries not appearing on a ledger printed earlier, on April 3, 2013, which led Judge Bair to find that "when comparing the ledgers for the same client printed on different days, there was in fact different information." The additional entries on the January 20, 2015 ledger detailed the payment of $300 from the trust account to cover fees, and the resulting zero balance in Ms. Klein's trust account. Again, we overrule this exception as the finding was supported by clear and convincing evidence.

Judge Bair also found that Rand "failed to provide Ms. Klein with a copy of her file upon his termination", to which Rand excepts. Rand asserts that he "voluntarily provided [Ms. Klein] with her Narrative, Addendum, and other documents requested by her free of charge just prior to her discharging him." He urges that upon termination he discussed with Ms. Klein that she had sufficient information to proceed with her claim against the school system. Judge Bair's finding, however, was not related to the sufficiency of the information provided to Ms. Klein by Rand, but was concerned with whether Rand had supplied his entire file to Ms. Klein.

Ms. Klein had made several requests, both generally and specifically, for her file and any accompanying documents: on March 7, 2013, Ms. Klein stated in an e-mail to Rand "Please forward my file and any other information pertaining to my case to my home address[.]"; this was followed, on March 22, 2013, by an e-mail specifically requesting her signed EEOC charges, Rand's contract and bills and the March 17, 2012 rebuttal from the school system.

Ms. Klein testified regarding the documents she had in her possession at the time she terminated Rand's services, which included "letters that [she had] written to a couple of people" and "the judgment". She testified she did not have the school system's position statement, her original complaint with the EEOC or any correspondence between Rand and the EEOC regarding the conciliation process. Rand testified that he had not provided Ms. Klein with any of his correspondence with the EEOC. We overrule this exception, as the finding was supported by clear and convincing evidence.

Rand further excepts to the finding that he misrepresented his having "won" Ms. Klein's EEOC case and been awarded attorneys' fees. Judge Bair found:

> On April 15, 2013, Ms. Klein filed a complaint with the Attorney Grievance Commission. On April 26, 2013, Bar Counsel forwarded a copy of Ms. Klein's complaint to Respondent and in an accompanying letter, requested a written response to the complaint within fifteen days. On May 10, 2013, Respondent sent a letter to Bar Counsel in response to Ms. Klein's complaint. That letter included the following statements:
>     1. "I won her case (including an award of attorney's fees)..."
>     2. "Ms. Klein paid $4,000. . ." and
>     3. "When the EEOC ruled in her favor, it also ruled that I was entitled to attorney's fees."
>
> The letter conveys that Respondent believes Ms. Klein's complaint arises out of a fee dispute.
>
> *     *     *
>
> Respondent admitted that he made misrepresentations to Bar Counsel. He admitted that he misrepresented the amount of money paid to him. Second, Respondent admitted that it was an "exaggeration" that he was awarded attorney's fees by the EEOC. Indeed, he was *not* awarded attorney's fees.

In his May 10, 2013 letter to Bar Counsel, Rand stated:

> This is another case where the client signed a fee agreement based on a reduced charging rate (because she was a public school educator), I won her

case (including award of attorney's fees) . . . When the EEOC decided the case in her favor, it also ruled that I was entitled to my attorneys fees."

Rand argues that, by securing a determination from the EEOC that Ms. Klein was discriminated against at her school, he achieved Ms. Klein's goal and, therefore, "won." Further, by responding to Bar Counsel that he had been awarded attorneys' fees, Rand asserts that, rather than a misrepresentation, his statement was merely an exaggeration; it was his expectation that he would receive an award of fees.

The determination by the EEOC, dated January 28, 2013, of harassment because of age and race does not assure that Rand was entitled to attorneys' fees and in fact, makes no mention of any:

> Based on this analysis, I have determined that the evidence obtained during the investigation establishes that [Principal] harassed [Ms. Klein] because of her age and race, in violation of the ADEA and Title VII. EEOC is unable to conclude that the information obtained establishes any other violation of the statutes.

> This determination is final. . . . Therefore, I invite the parties to join with the Commission in reaching a just resolution of this matter.

We overrule this exception and determine that Judge Bair's finding was based on clear and convincing evidence.

Rand further excepts to the finding he "failed to respond to Bar Counsel's requests for information", asserting that he, eventually, provided all of the requested information. Judge Bair found:

> On August 26, 2013, Bar Counsel sent a letter to Respondent advising him that Ms. Klein's complaint had been docketed for further investigation and asking "that you reconsider your position and provide me with the information and documentation I requested in my letter of June 11, 2013

37

within fifteen (15) days. My investigator, William M. Ramsey, will be in touch with you in the near future to make arrangements to pick up the requested documentation if you are unable to deliver it to our office....You are also advised that the Maryland Rules of Professional Conduct 8.1 provides that a lawyer, in connection with a disciplinary matter, shall not knowingly fail to respond to a lawful demand for information by a disciplinary authority."

On September 9, 2013, Respondent requested an extension of time to "formulate [his] response." On September 11, 2013, Bar Counsel granted Respondent's request for an extension and requested the information and documentation be provided no later than September 30, 2013. On September 30, 2013, Respondent requested a second extension, stating that his schedule had "precluded [his] finalizing a reasonable response." Bar Counsel granted Respondent's request for a second extension on October 8, 2013.

On October 11, 2013, Respondent mailed Bar Counsel a letter stating that he had "taken the entire file to the printer and it will be here for pickup by your Investigator from this point forward. If you do not believe this is an adequate response, please contact me." Sometime around late October or early November 2013, a representative from Bar Counsel came and picked up Ms. Klein's client file; no bank statements had been produced, but the ledger was included in the file. On May 9, 2014, Respondent finally provided some bank statements for "months that showed every transaction on the client ledger that had been made with her escrow money," cancelled checks, and deposit slips. Respondent did not provide all bank records for the entire time Ms. Klein was his client, but stated that he believed that providing the ledger was sufficient to comply with Bar Counsel's request for "all records created and maintained pursuant to [Maryland Rule 16-606.1]."

On November 25, 2014, Petitioner's counsel took Respondent's deposition. During his deposition, Respondent agreed to provide additional documentation related to Ms. Klein's funds; namely, documentation evidencing whether there remained $300 of Ms. Klein's funds in trust or whether the funds had been withdrawn. Besides that information, Respondent believed he had provided all documents relating to Maryland Rule 16-606.1 and MLRPC 1.15. On the morning of trial, January 21, 2015, Respondent provided selected additional bank account statements.

(internal citations omitted).

Rand initially replied to Bar Counsel's request for information, sent on April 26, 2013, on May 10, 2013, but provided no documentation. Bar Counsel, in a second letter dated June 11, 2013, requested the following specific documentation:

1. A copy of his retainer agreement with Ms. Klein;
2. Copies of all records created and maintained pursuant to Maryland Rule 16-606.1 for the receipt, maintenance and disbursement of Ms. Klein's funds;
3. Copies of all correspondence between himself and Ms. Klein including all email correspondence; and
4. Any and all documentation to support the billing entries in the undated "Client Ledger" provided to Bar Counsel by Ms. Klein including but not limited to copies of all correspondence related to the representation of Ms. Klein, notes of all telephone conversations or meetings relating to the representation of Ms. Klein and all filings.

On June 28, 2013, Rand replied in a lengthy letter to Bar Counsel, yet provided none of the requested documentation. Bar Counsel again sought the documentation from Rand on August 26, 2013, stating, in part, "I ask that you reconsider your position and provide [Bar Counsel] with the information and documentation requested in [the] letter of June 11, 2013 within fifteen (15) days." In response to Bar Counsel's request, Rand asked for, and was granted, an extension on September 9, 2013 and again on September 30, 2013. Bar Counsel eventually collected documents from Rand in late October or early November of 2013, but bank statements were missing. Rand provided some bank statements on May 9, 2014, and agreed during his deposition on November 25, 2014 to provide additional documentation, which was received by Bar Counsel on January 21, 2015. Judge Bair's finding that Rand failed to respond to Bar Counsel's requests was supported by clear and convincing evidence, and we overrule this exception.

39

We overrule each of the exceptions raised by Rand as to the findings of fact. All of Judge Bair's findings of fact were supported by clear and convincing evidence in the record.

We now turn to Rand's various exceptions to Judge Bair's conclusions of law.

### IV. Rand's Exceptions to Conclusions of Law

Rand also filed exceptions to Judge Bair's Conclusions of Law in which Judge Bair determined that Rand violated a number of our Rules of Professional Conduct. We review the hearing judge's conclusions of law *de novo*, addressing each of Rand's exceptions. Rule 16-759(b).

The initial exceptions Rand interposes are to Judge Bair's conclusions that he violated Rules 1.4(a) and 1.5(a) related to Rand's failure to provide Ms. Klein with invoices when he requested replenishment of the "evergreen" retainer as well as by failing to file the addendum and communicating with Ms. Klein about his decision not to file it. Rule 1.4(a) provides:

A lawyer shall:

> (1) promptly inform the client of any decision or circumstance with respect to which the client's informed consent, as defined in Rule 1.0(f), is required by these Rules;
>
> (2) keep the client reasonably informed about the status of the matter;
>
> (3) promptly comply with reasonable requests for information; and
>
> (4) consult with the client about any relevant limitation on the lawyer's conduct when the lawyer knows that the client expects assistance not permitted by the Maryland Lawyers' Rules of Professional Conduct or other law.

40

Rule 1.5 provides, in relevant part:

> (a) A lawyer shall not make an agreement for, charge, or collect an unreasonable fee or an unreasonable amount for expenses. The factors to be considered in determining the reasonableness of a fee include the following:

*     *     *

> (4) the amount involved and the results obtained[.]

Rand argues that he did not violate Rule 1.4(a) or 1.5(a), as he was not required to send monthly invoices to Ms. Klein and the addendum was incorporated into a response sent to the EEOC.

The fee agreement between Rand and Ms. Klein included an "evergreen" clause,[20] which provided that Rand would request replenishment to the initial level of $1,500, by having Ms. Klein pay "those monies necessary, on a 30-day, as-billed basis[.]" Rand's obligation, under the agreement, was to charge his time spent on Ms. Klein's matter to the "evergreen" retainer, and, as needed, request replenishment of the retainer by sending a statement (invoice) to Ms. Klein.

Judge Bair found that on two occasions Rand requested, and received, $1,000 to replenish the retainer, but did not provide Ms. Klein with a statement for services, as

---

[20] An "evergreen" retainer has been defined as:
> An "evergreen" retainer mirrors the tree after which it was named. The debtor is responsible for replenishing the retainer after his attorney has drawn down or used that retainer for compensation for services rendered.

*In re GSB Liquidating Corp.*, No. 94 B 24672, 1995 WL 521528, at *14 n.13 (Bankr. N.D. Ill. Aug. 21, 1995)

necessitated by his retainer agreement. In addition, Judge Bair found that Ms. Klein requested, several times, that Rand send her an invoice. We recently stated in *Attorney Grievance v. Green*, 441 Md. 80, 91-2, 105 A.3d 500, 507-08 (2014), that a failure to provide invoices, as agreed upon in the attorney's fee agreement, violated Rules 1.4(a) and 1.5(a). In the present case, Rand's failure to provide an invoice both when requested by Ms. Klein and when he requested replenishment of the retainer, in derogation of the terms of his fee agreement, violated Rules 1.4(a) and 1.5(a).

As to the second aspect of the violation of Rule 1.4(a), Judge Bair found that Rand did not file the addendum as instructed in Ms. Klein's February 7, 2011 e-mail, but incorporated it into a response filed with the EEOC without ever informing Ms. Klein. We have held that failure to keep the client informed and failure to respond to client requests for information violates Rule 1.4(a). *Attorney Grievance v. Brown*, 426 Md. 298, 321-22, 44 A.3d 344, 358 (2012) (failure to inform clients of discovery sanctions, failure to notify a client that his claims had been dismissed and failure to respond to clients' numerous requests about the status of their cases violated Rule 1.4(a)); *Attorney Grievance v. McCulloch*, 404 Md. 388, 398-99 946 A.2d 1009, 1015 (2008) (failure to advise the client of the status of efforts, failure to keep the client informed and failure to respond to numerous requests about the status of the case violated Rule 1.4(a)). Therefore, we conclude that Rand also violated Rule 1.4(a) with respect to the addendum when he did not inform Ms. Klein of his unilateral decision to incorporate the addendum into a different document.

Rand also excepts to Judge Bair's conclusion that he violated Rule 1.4(b) when he "failed to communicate with Ms. Klein about potential ramifications of her early retirement in the fall of 2011." Rand argues that no evidence of any adverse consequence to Ms. Klein having taken early retirement was presented at trial and that Ms. Klein did not discuss with him her retirement before she retired in November 2011. Judge Bair found, to the contrary, that Ms. Klein discussed her situation with Rand prior to her retirement in November 2011 and that Rand failed to advise Ms. Klein regarding both her decision to retire early and the option of a medical retirement and the potential effects of either on her EEOC complaint.

Rule 1.4(b) states, "A lawyer shall explain a matter to the extent reasonably necessary to permit the client to make informed decisions regarding the representation." We have determined that failure to provide a client with accurate information to aid in making informed decisions violates Rule 1.4(b). *Attorney Grievance v. Narasimhan*, 438 Md. 638, 661-62, 92 A.3d 512, 525 (2014) (failure to provide complete and accurate information and advice to allow client to make an informed decision on employee immigration violated Rule 1.4(b)). In the present case, Rand at no time advised Ms. Klein of her option to pursue medical retirement and the impact of that type of retirement on her EEOC case, and, therefore, violated Rule 1.4(b).

Rand further excepts to Judge Bair's conclusion that Rand violated Maryland Rules 16-606.1(a)(2) and (a)(3), and in so doing, violated Rule 1.15(a) when he sent Ms. Klein an incomprehensible ledger containing duplicate entries that made it impossible to determine how much Rand had been paid and how much was owed by Ms. Klein.

Maryland Rule 16-606.1 governs record-keeping for attorney trust accounts, and provides, in relevant part:

> (a) Creation of Records. The following records shall be created and maintained for the receipt and disbursement of funds of clients or of third persons:
>
> *    *    *
>
> (2) Deposits and Disbursements. A record for each account that chronologically shows all deposits and disbursements, as follows:
>
>> (A) for each deposit, a record made at or near the time of the deposit that shows (i) the date of the deposit, (ii) the amount, (iii) the identity of the client or third person for whom the funds were deposited, and (iv) the purpose of the deposit;
>>
>> (B) for each disbursement, including a disbursement made by electronic transfer, a record made at or near the time of disbursement that shows (i) the date of the disbursement, (ii) the amount, (iii) the payee, (iv) the identity of the client or third person for whom the disbursement was made (if not the payee), and (v) the purpose of the disbursement;
>>
>> (C) for each disbursement made by electronic transfer, a written memorandum authorizing the transaction and identifying the attorney responsible for the transaction.

Maryland Rule 16-606.1 is included under Rule 1.15(a), which provides, in part:

> A lawyer shall hold property of clients or third persons that is in a lawyer's possession in connection with a representation separate from the lawyer's own property. *Funds shall be kept in a separate account maintained pursuant to Title 16, Chapter 600 of the Maryland Rules, and records shall be created and maintained in accordance with the Rules in that Chapter. . .* Complete records of the account funds and of other property shall be kept by the lawyer and shall be preserved for a period of at least five years after the date the record was created.

(emphasis added).

Rand urges that his billing mistakes were simply clerical and that these clerical errors did not violate Maryland Rule 16-606.1. The factual findings of Judge Bair, which we have upheld, however, reflect that Rand's ledgers, reflecting expenses and payments, were systematically confusing and sometimes duplicative. We have held that the inadequacy of maintaining records related to client funds constitutes violations of Rules 16-606.1 and 1.15(a). *Attorney Grievance v. Harmon*, 433 Md. 612, 625, 72 A.3d 555, 563 (2013) (misidentification of the client from whom an attorney had received and deposited $300, prior to an overdraft, and failure to maintain records, made at the time of the disbursements and deposits to the trust account—showing the date of the deposit, the amount deposited, the payee, the identity of the client and the purpose for the transaction—indicated inadequate record-keeping in violation of Maryland Rule 16-601.1 and Rule 1.15(a)). We, therefore, conclude that Rand violated Rules 16-606.1 and 1.15(a) by failing to create and maintain adequate client records.

Judge Bair next concluded that Rand violated Rule 1.16(d) when he failed to provide Ms. Klein with a copy of her file upon termination of his representation. Rule 1.16(d) provides:

> Upon termination of representation, a lawyer shall take steps to the extent reasonably practicable to protect a client's interests, such as giving reasonable notice to the client, allowing time for employment of other counsel, surrendering papers and property to which the client is entitled and refunding any advance payment of fee or expense that has not been earned or incurred. *The lawyer may retain papers relating to the client to the extent permitted by other law.*

(emphasis added).

45

Judge Bair concluded that, by "fail[ing] to provide invoices and [ ] to keep proper billing records for this client, [Rand] could not then assert a retaining lien on [Ms. Klein's] file based on his questionable billing practices." Additionally, Judge Bair found that Ms. Klein was entitled to the papers Rand had in his possession, because of the impending conciliation of her claim at the EEOC. Rand excepts to Judge Bair's conclusions and argues that he was justified in asserting a retaining lien as a result of Ms. Klein's refusal to pay his fee; it is to the attorney retaining lien that we now turn.

Under our jurisprudence, an attorney possesses the right to assert "a retaining lien on all papers, securities and money belonging to his client which comes into his possession in the course of his professional employment." *Ashman v. Schecter*, 196 Md. 168, 173, 76 A.2d 139, 141-42 (1950). In *Schecter*, we discussed the retaining lien as differentiated from a charging lien:

> One is a retaining lien on all papers, securities and money belonging to his client which come into his possession in the course of his professional employment. This is a general lien which gives him the right to retain such things until all his charges against his client are paid. As the name implies, it is dependent upon possession. It is, generally speaking, a passive lien and cannot be actively enforced either at law or in equity. The other lien is a charging lien, which binds a judgment recovered through the attorney's efforts.

*Id.* at 173-74, 76 A.2d 139, 141-42 (1950) (internal citations omitted). In 1995, Maryland Rule 2-652 was adopted, setting forth the rule for enforcement of attorney liens, covering

both the common law retaining lien and the statutory charging lien.[21] Md. Rule 2-652 (1996 Repl. Vol.).

---

[21] The attorney charging lien was established by the Legislature in 1985, under Section 46 of Article 10. Md. Code (1957, Repl. Vol. 1987). Under a charging lien, the attorney could attach a lien for unpaid fees and compensation on certain judgments entered in favor of the client. In 1989, Section 46 of Article 10 was recodified and incorporated into Section 10-501 of the Business Occupations and Professions Article. Md. Code, Bus. Occ. & Prof. § 10-501 (1989).

Maryland Rule 2-652, which addresses both the retaining and charging liens, provides:

(a) Retaining lien. Except as otherwise provided by the Maryland Lawyers' Rules of Professional Conduct, an attorney who has a common-law retaining lien for legal services rendered to a client may assert the lien by retaining the papers of the client in the possession of the attorney until the attorney's claim is satisfied.

(b) Statutory lien. An attorney who has a lien under Code, Business Occupations and Professions Article, § 10-501, may assert the lien by serving a written notice by certified mail or personal delivery upon the client and upon each person against whom the lien is to be enforced. The notice shall claim the lien, state the attorney's interest in the action, proceeding, settlement, judgment, or award, and inform the client or other person to hold any money payable or property passing to the client relating to the action, proceeding, settlement, judgment, or award.

(c) Adjudication of Rights and Lien Disputes.

(1) When a circuit court action has been filed. If a lien asserted pursuant to this Rule relates to an action that has been filed in a circuit court of this State, on motion filed by the attorney, the attorney's client in the action, or any person who has received a notice pursuant to section (b) of this Rule, the court shall adjudicate the rights of the parties in relation to the lien, including the attorney's entitlement to a lien, any dispute as to the papers subject to a lien under section (a) of this Rule, and the amount of the attorney's claim.

(2) When no circuit court action has been filed. If a lien is asserted pursuant to this Rule and a related action has not been filed in a circuit court of this State, the attorney, the attorney's client, or any person

(continued . . .)

A retaining lien permits the attorney to "secure" his claim for unpaid fees through retention of client property in his possession. *See* C. Wolfram, *Modern Legal Ethics*, § 9.6.3, Attorney Liens, 558-59 (1986). The attorney holds the property until the client pays the balance of the fee owed or possibly provides some other security.

The retaining lien is predicated on "legal services rendered to a client." Md. Rule 2-652(a) (1996 Repl. Vol.). We noted in *Attorney Grievance v. Sheridan*, 357 Md. 1, 34, 741 A.2d 1143, 1161 (1999), that, essentially, the client is coerced into paying the fee charged for the legal services provided, "because of the embarrassment, inconvenience or worry caused by the attorney's asserting the lien.".

One predicate, of course, to the assertion of a retaining lien is actual possession of client property. *Attorney Grievance v. Potter*, 380 Md. 128, 163, 844 A.2d 367, 387 (2004) ("A retaining lien depends upon the attorney having possession of the client's papers."); *Diamond v. Diamond*, 298 Md. 24, 467 A.2d 510 (1983) (attorney possessed only a draft, not the actual funds, and, therefore, could not assert a lien on the funds); *Campen v. Talbot Bank of Easton*, 271 Md. 610, 319 A.2d 125 (1974) (an attorney did not possess funds held in escrow by his agent and, therefore, did not have a retaining lien on the funds); *Tucker v. Dudley*, 223 Md. 467, 164 A.2d 891 (1960) (funds collected and

---

(. . . continued)
who has received a notice pursuant to section (b) of this Rule may file a complaint with a circuit court to adjudicate the rights of the parties in relation to the lien, including the attorney's entitlement to a lien, any dispute as to the papers subject to a lien under section (a) of this Rule, and the amount of the attorney's claim.

Md. Rule 2-652 (2015 Repl. Vol.)

held by bank were not reduced to possession by attorney, and no attorney lien was held); *Schecter*, 196 Md. 168, 76 A.2d 139 (1950) (no attorney retaining lien to secure fees exists on real property).

The attorney also must have performed services for the client, for which the attorney was entitled to recompense, in order to validly assert the retaining lien. *See Attorney Grievance Comm'n v. McIntire*, 286 Md. 87, 405 A.2d 273 (1979) (no retaining lien where "actions were not predicated on any application of principles of law governing a *quantum meruit* recovery and justifying the assertion of a lawyer's retaining lien on check proceeds"). Important in the instant case and to the validity of the retaining lien Rand asserted on Ms. Klein's papers is whether the fee that Rand asserted of $11,230 bore a discernible reasonable relationship to the services that he performed and was in compliance with the fee agreement with Ms. Klein.

In *Matter of Tillman*, 462 S.E.2d 283 (S.C. 1995), the client hired Tillman to represent her following an automobile accident. *Id.* at 284. They signed a retainer agreement providing for a contingent fee or, in the event Tillman was discharged prior to a settlement or verdict, an hourly rate of $105. *Id.* The client discharged Tillman prior to a resolution of the case and requested her file. *Id.* Tillman refused to turn over the file and demanded payment of $2,400. *Id.* His time record, however, indicated he had only spent 5.6 hours on the matter. *Id.* The client disputed the fee charged and hired new counsel, although Tillman continued working on the file after termination, sending a demand letter to the client's insurance carrier, and refused, among other things, to turn over the client

49

file. *Id.* The Supreme Court of South Carolina, in reviewing whether the attorney could assert the retaining lien, stated:

> Further, respondent cannot meet his burden of showing the circumstances justified assertion of the common law retaining lien here. In order to establish the right to the lien, he must show, among other things, that the client "deliberately refus[ed] to pay a fee [that was] clearly agreed upon and is due."

*Id.* at 285 (alteration original). The Court further determined that the attorney could not "show even a good faith basis for asserting a retaining lien". *Id.* at 286.

An attorney, at the time he asserts a retaining lien, must inform the client of the liquidated amount of unpaid fees and expenses. Reasonably clear and understandable substantiation of how the attorney arrived at those liquidated amounts must also be offered. In reaching this conclusion, we do not say that any dispute over unpaid fees or expenses initiated by the client vitiates a retaining lien, or that an honest mistake in calculation obviates the lien.

In the instant case, Rand asserted in his e-mail dated March 28, 2013 that he was entitled to a fee of $11,230 and submitted confusing and duplicative ledger entries to Ms. Klein as the basis for his fee. Rand had not complied with the tenets of his own fee agreement prior to asserting the retaining lien when he failed to submit invoices upon replenishment, so that not only was the fee agreement breached but also Ms. Klein had no idea what she may have owed justifiably for services rendered. As a result, Rand was not entitled to assert a retaining lien for the then-claimed balance of his asserted fee.

Rand also argues, however, even were his retaining lien to lack validity, that he did not violate Rule 1.16(d) by failing to give Ms. Klein her file, because Ms. Klein

50

already had the Narrative and Addendum and could obtain other documents from the EEOC or the school system. Judge Bair found that Ms. Klein was entitled to the documents in Rand's possession, because of the impending EEOC conciliation process; we agree. We, therefore, overrule Rand's exception and conclude that Rand violated Rule 1.16(d) when he refused to provide Ms. Klein with her file.

Rand further excepts to Judge Bair's conclusion that Rand violated Rules 8.1(a) and (b) when he knowingly made misrepresentations to Bar Counsel about his having "won" Ms. Klein's case and an award of attorneys' fees and "knowingly and intentionally" failed to respond to requests for information. Rule 8.1 provides:

> An applicant for admission or reinstatement to the bar, or a lawyer in connection with a bar admission application or in connection with a disciplinary matter, shall not:
>
> (a) knowingly make a false statement of material fact; or
>
> (b) fail to disclose a fact necessary to correct a misapprehension known by the person to have arisen in the matter, or knowingly fail to respond to a lawful demand for information from an admissions or disciplinary authority, except that this Rule does not require disclosure of information otherwise protected by Rule 1.6.

Rand asserts that his statements that "I won her case (including an award of attorney's fees)" and "When the EEOC ruled in her favor, it also ruled that I was entitled to attorneys fees" in his May 10, 2013 letter to Bar Counsel were not material with respect to his claim for fees. He further argues that his letter of June 28, 2013 and other correspondence with Bar Counsel simply set out initial conditions and requested extensions. On June 28, 2013, Rand wrote Bar Counsel, stating that:

51

It is in light of this administrative apparatus and personal history with you that I have concluded, at my peril, that your demand for "information" is unreasonable and therefore invalid. However, in recognition of my duty to respond and to disclose under Rule 8.1, I will allow you or your investigator to come to my office, by agreed-upon appointment, to examine the subject case file and such other items for which you can demonstrate some articulable "probable cause".

We upheld Judge Bair's finding that Rand misrepresented his having "won" Ms. Klein's case, when, in fact, the EEOC had only determined that she had suffered discrimination. The EEOC, in its determination, recommended conciliation between the parties and, in fact, the case was ongoing at the time Ms. Klein terminated Rand's representation.

Judge Bair also found that Rand had misrepresented to Bar Counsel his being awarded attorneys' fees based on the EEOC's determination that Ms. Klein had experienced discrimination. The determination that Ms. Klein had suffered harassment did not guarantee an award of attorneys' fees, and no mention of fees was made by the EEOC.

Finally, Rand failed to provide documents in his June 28, 2013 response to Bar Counsel, and, after receiving the two extensions, produced an incomplete file. Judge Bair found that none of the specified documents requested by Bar Counsel in the May 10, 2013 letter to Rand was contained in his response on June 28, 2013, prompting Bar Counsel to again request the information on August 26, 2013. Rather than provide the requested documents, Rand sought two extensions. Judge Bair further found that when Rand did provide documents for Bar Counsel to pick up in late October or early

November of 2013, the documentation was incomplete. We upheld Judge Bair's finding that Rand failed to respond to Bar Counsel's requests for information.

We have stated that, "[a] Respondent has an obligation to provide Bar Counsel with any relevant material requested in the course of an investigation." *Attorney Grievance v. Khandpur*, 421 Md. 1, 12, 25 A.3d 165, 172 (2011), quoting *Attorney Grievance v. Obi*, 393 Md. 643, 654, 904 A.2d 422, 428 (2006). "A request for information by Bar Counsel does not have to come in any particular form in order to trigger the compliance requirements of MRPC 8.1." *Id.* at 12, 25 A.3d at 172 (where Bar Counsel twice asked for the attorney's IOLTA, and receipt of neither the documents nor a satisfactory explanation for their absence, presented clear and convincing evidence the attorney violated Rule 8.1(b)). A refusal to timely respond to a request from Bar Counsel for information violates Rule 8.1(b). *Harmon*, 433 Md. at 628, 72 A.3d at 564-65 ("Although we acknowledge that Harmon did, at times, make some effort to respond to Bar Counsel's requests, his haphazard and incomplete cooperation, as evidenced by his letters dated August 22, September 22 (although not received by Bar Counsel), and February 5, does not justify his failure to provide the records requested by Bar Counsel or respond to Bar Counsel's other correspondence."); *Attorney Grievance v. Tanko*, 427 Md. 15, 35, 45 A.3d 281, 293 (2012) (refusal to provide Bar Counsel with the client's file, despite repeated requests and receipt of approval from the client, and waiting until the day of the hearing to turn over the client file violated Rule 8.1(b)). We conclude that Rand violated Rules 8.1(a) and (b), and overrule his exception.

Finally, Rand excepts to Judge Bair's conclusion that Rand violated Rules 8.4(a), (c) and (d) when he violated others of the Maryland Rules of Professional Conduct, mishandled Ms. Klein's funds by failing to provide invoices and keep accurate billing records and misrepresented information to Bar Counsel. Rule 8.4 provides, in relevant part:

It is professional misconduct for a lawyer to:

(a) violate or attempt to violate the Maryland Lawyers' Rules of Professional Conduct, knowingly assist or induce another to do so, or do so through the acts of another;

\* \* \*

(c) engage in conduct involving dishonesty, fraud, deceit or misrepresentation;

(d) engage in conduct that is prejudicial to the administration of justice[.]

Rand argues, as he did earlier, that he was not required to provide invoices, that he kept accurate financial records and that he merely "exaggerated", but did not misrepresent, information to Bar Counsel. Each of these exceptions has been overruled.

We have previously held that violations of other rules under the Maryland Rules of Professional Conduct constitute a violation of Rule 8.4(a). *Attorney Grievance v. Foltz*, 411 Md. 359, 411, 983 A.2d 434, 465 (2009) (violations of Rules 1.15, 8.4(c) and (d) and Maryland Rule 16-607 violated Rule 8.4(a)). We already have concluded that Rand violated Rules 1.4, 1.5, 1.15(a), 1.16(d), 8.1(a) and (b) and Rule 16-606.1, and also conclude that by so doing he violated Rule 8.4(a).

Rand, in arguing that he did not misrepresent information to Bar Counsel, excepts to the conclusion by Judge Bair that he violated Rule 8.4(c). Judge Bair determined that Rand violated 8.4(c), because he failed to keep Ms. Klein informed as to the status of the addendum as well as his services provided and the cost thereof, in addition to Rand's misrepresentations to Bar Counsel of his having "won" Ms. Klein's case and his having been awarded attorneys' fees.

Rule 8.4(c) is violated by making misrepresentations to the client, which includes the concealment of material information from the client. *Brown*, 426 Md. at 324, 44 A.3d at 359-60 (misrepresenting the status of the case as pending and concealing dismissal of a claim from the client); *see Attorney Grievance v. Hamilton*, 444 Md. 163, 193, 118 A.3d 958, 975 (2015) (misrepresenting the filing of papers in circuit court and failure to maintain the required financial records relating to the fee violated Rule 8.4(c)). These misrepresentations need not be intentional. *Attorney Grievance v. Bleecker*, 414 Md. 147, 169, 994 A.2d 928, 941 (2010); *Attorney Grievance v. Harris*, 403 Md. 142, 939 A.2d 732 (2008). In the present case, Rand failed to inform Ms. Klein that the addendum was not filed in February, or that he had unilaterally incorporated the addendum into another document. Rand also misrepresented to Bar Counsel, and Ms. Klein, that he "won" her case and was awarded attorney fees. We conclude, therefore, that Rand violated Rule 8.4(c).

Rand excepts to Judge Bair's conclusion that he violated Rule 8.4(d) when he failed to provide an invoice to Ms. Klein, failed to keep accurate records, made misrepresentations to Bar Counsel and asserted an improper retaining lien. We have held,

however, that "[c]onduct which is likely to impair public confidence in the profession, impact the image of the legal profession and engender disrespect for the court is conduct prejudicial to the administration of justice." *Attorney Grievance v. Agbaje*, 438 Md. 695, 717, 93 A.3d 262, 274 (2014). We have also held that failure to provide information in a timely manner to Bar Counsel is conduct prejudicial to the administration of justice. *Attorney Grievance v. Brigerman*, 441 Md. 23, 40, 105 A.3d 467, 477 (2014) (failure to timely respond to multiple letters from Bar Counsel requesting information); *Attorney Grievance v. Fox*, 417 Md. 504, 538, 11 A.3d 762, 782 (2010) (failure to timely respond to Bar Counsel).

Rand violated Rule 8.4(d) when he asserted an invalid retaining lien and failed to keep records in accordance with Maryland Rule 16-606.1. He also certainly violated Rule 8.4(d), because he misrepresented to Bar Counsel both his having "won" Ms. Klein's case and his having been awarded attorneys' fees.

## V. Sanction

Rand offered no mitigation during the disciplinary hearing on January 21 and 22, 2015, and Judge Bair found none. The Commission recommends that we indefinitely suspend Rand from the practice of law. Rand recommends that we dismiss the case, which we will not do.

We have previously considered various aggravating factors found in Standard 9.22 of the American Bar Association Standards for Imposing Lawyer Sanctions when imposing discipline; the factors are:

(a) prior disciplinary offenses;

(b) dishonest or selfish motive;
(c) a pattern of misconduct;
(d) multiple offenses;
(e) bad faith obstruction of the disciplinary proceeding by intentionally failing to comply with rules or orders of the disciplinary agency;
(f) submission of false evidence, false statements, or other deceptive practices during the disciplinary process;
(g) refusal to acknowledge wrongful nature of conduct;
(h) vulnerability of victim;
(i) substantial experience in the practice of law;
(j) indifference to making restitution;
(k) illegal conduct, including that involving the use of controlled substances.

*Standard 9.22 of the American Bar Association Standards for Imposing Lawyer Sanctions* (1992); *see Hodes,* 441 Md. at 206, 105 A.3d at 574–75 (2014). Judge Bair found several of these factors relevant to the present case, those being: (a) prior disciplinary offenses, (d) multiple offenses, (f) submission of false evidence, false statements, or other deceptive practices during the disciplinary process, (g) refusal to acknowledge wrongful nature of conduct and (i) substantial experience in the practice of law.

Rand excepts to Judge Bair's finding that he had prior disciplinary offenses, submitted false statements and refused to acknowledge the wrongful nature of his conduct, which we address in turn. Factor (a) concerns prior disciplinary offenses. Rand excepts to Judge Bair's finding that "Respondent received a reprimand from Bar Counsel in May 2012 relating to his personal bankruptcy filings 'in which he included unverified and inaccurate information, some of which were offered under the penalty of perjury.'" We conclude that Judge Bair's finding that factor (a) is implicated was supported by clear and convincing evidence.

Factor (d), "multiple offenses", is implicated in the present case, where Rand violated Rules 1.4, 1.5(a), 1.15(a), 1.16(d), 8.1(a) and (b), 8.4(a), (c) and (d) and 16-606.1. *See Hodes*, 441 Md. at 207-08, 105 A.3d at 575 (violations of Rules 1.7, 1.15(d), 8.1(a), 8.4(a), (c) and (d) implicated factor (d)); *Attorney Grievance v. Bleecker*, 414 Md. 147, 177-78, 994 A.2d 928, 946 (2010) (the violation of multiple disciplinary rules implicated aggravating factor (d)). Rand committed these multiple offenses when he: failed to comply with his own fee agreement by not providing invoices to Ms. Klein when he requested replenishment of the retainer; failed to inform Ms. Klein that he did not file the addendum, but rather unilaterally decided to incorporate it in another document; failed to adequately maintain client records; and misrepresented to Bar Counsel that he "won" Ms. Klein's EEOC case and was awarded attorneys' fees.

Rand excepts to factor (f) "false statements", asserting once again that he did not make misrepresentations to Bar Counsel. We have overruled this exception because Rand did misrepresent to Bar Counsel his having "won" Ms. Klein's case and also having been awarded attorneys' fees. Rand's having provided false statements to Bar Counsel implicates factor (f). *Hodes*, 441 Md. at 208, 105 A.3d at 575; *Attorney Grievance v. Dominguez*, 427 Md. 308, 327, 47 A.3d 975, 985 (2012).

Finally, Rand excepts to the application of factor (g), "refusal to acknowledge wrongful nature of conduct". *See Attorney Grievance v. Mixter*, 441 Md. 416, 530, 109 A.3d 1, 70 (2015) ("Out of Mixter's one-hundred and six pages of exceptions, he only asserts, in one sentence, that he is 'sincerely remorseful', without elaboration."); *Hodes*, 441 Md. at 208, 105 A.3d at 576 (refusing to acknowledge any wrongdoing). Rand,

58

however, has thus far refused to acknowledge any wrongdoing, instead arguing that he simply made "clerical errors", was not required to provide Ms. Klein with any invoices and attempted only to "set conditions" on Bar Counsel's inquiries for documentation rather than refused to comply. We overrule this exception.

In the present case, we shall impose a sanction of indefinite suspension. We do so in reliance on our previous cases in which similar rules violations were presented and upon the aggravators found. *Attorney Grievance v. Green*, 441 Md. 80, 102, 105 A.3d 500, 513-14 (2014); *Attorney Grievance v. Harrington*, 367 Md. 36, 51, 785 A.2d 1260, 1268-69 (2001).

In *Green*, 441 Md. 80, 105 A.3d 500 (2014), Green, after receiving an initial $3,500 retainer deposit, failed to send his client any invoices detailing his services, despite being required to do so under his retainer agreement. Although the client made numerous requests for invoices from Green, he provided her no invoice until a "pre-bill worksheet" was sent on August 11, 2011, indicating a total fee of $11,345.98. When the client sent a letter to Green on August 19, 2011, disputing the fee and noting Green's failure to provide any invoice, Green initially declined to respond. On May 29, 2012, Green did respond; however, he simply disagreed with the client's concerns, provided no support for his fee and demanded payment of the outstanding fee balance. After the client filed a complaint on June 4, 2012 with the Attorney Grievance Commission, Bar Counsel sent Green several letters requesting his response to the complaint.

We concluded that Green violated Rules 1.4(a)(2) and (a)(3), 1.5(a), 1.15(a) and (d), 8.1(b) and 8.4(a) and (d) and held that an indefinite suspension was appropriate,

59

"because there [was] nothing in the record plumbing the reasons for Green's misconduct or the likelihood that recidivism is not a concern, due to the multiple refusals to cooperate with Bar Counsel[.]" 441 Md. at 102, 105 A.3d at 513-14.

In *Harrington*, 367 Md. at 47-8, 785 A.2d at 1266-67, the attorney failed on several occasions to respond to client requests for information, terminated his representation without taking the required steps to protect the interests of the client and disregarded numerous requests for information from Bar Counsel. We held that, because he had violated Rules 1.3, 1.4(a) and (b), 1.16(d), 8.1(b) and 8.4(c) and (d), an indefinite suspension was warranted. *Id.* at 51, 785 A.2d at 1268-69.

Respondent, Charles Stephen Rand, violated Rules 1.4, 1.5(a), 1.15(a), 1.16(d), 8.1(a) and (b), 8.4(a), (c) and (d) and Maryland Rule 16-606.1 and aggravating factors apply. We determine that the appropriate sanction in the present case is an indefinite suspension.

**IT IS SO ORDERED; RESPONDENT SHALL PAY ALL COSTS AS TAXED BY THE CLERK OF THIS COURT, INCLUDING COSTS OF ALL TRANSCRIPTS, PURSUANT TO MARYLAND RULE 16-761, FOR WHICH SUM JUDGMENT IS ENTERED IN FAVOR OF THE ATTORNEY GRIEVANCE COMMISSION AGAINST CHARLES STEPHEN RAND.**

Circuit Court for Montgomery County
Case No.: 30325-M
Argued: September 29, 2015

IN THE COURT OF APPEALS

OF MARYLAND

Misc. Docket AG No. 40

September Term, 2014

ATTORNEY GRIEVANCE
COMMISSION OF MARYLAND

v.

CHARLES STEPHEN RAND

Battaglia
Greene
Adkins
McDonald
Watts
Harrell, Glenn T., Jr. (Retired,
  Specially Assigned)
Cathell, Dale R. (Retired,
  Specially Assigned),

JJ.

Dissenting Opinion by Adkins, J., which
McDonald, J., joins.

Filed:  December 22, 2015

Most respectfully, I dissent from the Majority opinion for the reasons set forth below.

## I. Billing Practices

The Majority uses overly broad strokes in addressing a lawyer's ethical obligations regarding the timing of bills. We should apply a more nuanced, contextual approach to this aspect of private law practice. The Majority says:

> Judge Bair found that on two occasions Rand requested, and received, $1,000 to replenish the retainer, but did not provide Ms. Klein with a statement for services, as necessitated by his retainer agreement. In addition, Judge Bair found that Ms. Klein requested, several times, that Rand send her an invoice. We recently stated in *Attorney Grievance Commission v. Green*, 441 Md. 80, 91–92, 105 A.3d 500, 507–08 (2014), that a failure to provide invoices, as agreed upon in the attorney's fee agreement, violated Rules 1.4(a) and 1.5(a). In the present case, **Rand's failure to provide an invoice both when requested by Ms. Klein and when he requested replenishment of the retainer**, in derogation of the terms of his fee agreement, violated Rules 1.4(a) and 1.5(a).

Maj. Slip Op. at 41–42 (emphasis added). I agree that Respondent violated Maryland Rules of Professional Conduct ("Rules") 1.4(a) and 1.5(a) when he delayed for a year sending his client a bill, especially since she requested one multiple times. But I am concerned about implications of the Majority's broad-stroke language about the obligation to bill. Lawyers have an obligation to send reasonable bills. *See* Rule 1.5(a) ("A lawyer shall not make an agreement for, charge, or collect an unreasonable fee . . . ."). When working on an hourly basis, this means a lawyer must take the time to assess whether the hours expended were reasonable before sending a bill. Thus, generating the bill is not simply pressing a button

on a computer or cell phone. Time records are easily obtainable, but the decision as to how much is reasonable to bill can require careful study of those records.

There are times when the press of substantive work will prevent a lawyer from taking the time to generate a bill. For a lawyer who does trial work, this is especially difficult—trying a case (including preparation) is so intense, all-consuming, and time-sensitive that it demands a lawyer's full attention. In finding a violation of Rules 1.4(a) and 1.5(a), in part for failing to provide an invoice "when requested," Maj. Slip Op. at 41–42, the Majority sends the following signal: whenever requested by a client, lawyers must drop the substance and pressing work they are doing and immediately assess how much of the hours billed to a file should actually be included on an invoice. Indeed, the Majority's opinion can be construed to mean that a lawyer must do this even if the client is unreasonable in the number and timing of her requests.

This is a misplaced priority and unfair to our profession. Society is fortunate that there are conscientious lawyers who care deeply about pursuing the best interests of their clients. If we tell those lawyers that they can be branded as unethical because they do not "promptly" send bills to their clients, or ask for more money to go into their "evergreen" accounts, we signal that lawyers should focus on money rather than pursuing their clients' goals. Not all lawyers send monthly bills, and this can be perfectly ethical.

It is entirely too easy for us who do not practice to sit here and pronounce that lawyers just must do it all—and do it on time—or they will be disciplined. Perhaps doing so is, realistically, much harder than we think it is. All in all, we should act with restraint when imposing discipline for a failure to send a bill promptly on demand or even a monthly

2

bill.  Each case should be evaluated based on the reasonable expectations of the lawyer and client, considering the fee agreement, and other circumstances of the representation.

## II. Sanction

The Majority has imposed our second-most severe sanction in a case arising out of one matter, in which Respondent was neither dishonest with his client (or the Court), nor incompetent.  He did not abandon his client.  Indeed, he accomplished something meaningful—securing a favorable result in an EEOC proceeding.  He did not mishandle funds in his trust account.

The hearing judge found that Respondent "did communicate frequently [with his client] during the course of the representation," but failed to communicate his decision not to file an addendum to the complaint (relating to events happening after the filing of the complaint) that he and his client had worked on together.  *See* Maj. Slip Op. at 21–22 (setting forth the judge's conclusions of law regarding Rule 1.4).  Respondent, however, included the new material in a later responsive filing.  Bar Counsel made no showing that this prejudiced the client's case with the EEOC.  I cannot see this as a significant failure when the information the client sought to convey in the Addendum was fully set forth in the responsive pleading.  What's more, Respondent's action did not cause any evident harm to the client—indeed, she prevailed with the EEOC.

As I indicated, Respondent violated Rule 1.4 when, despite his client's requests, he refrained from sending a bill for an entire year.  There was no finding, however, that his fees were excessive.  Respondent was partially but not fully cooperative with Bar Counsel, a violation of Rule 8.1(b), but we should not ignore that, in two earlier disciplinary cases,

3

Bar Counsel's charges against Respondent were ultimately dismissed. This may explain Respondent's aggressiveness in defending himself against these charges—improperly telling Bar Counsel that the favorable EEOC decision included an award of attorney's fees. Moreover, when his client fired him, his assertion that he had the right to retain his files pertaining to the EEOC claim was facially correct under Md. Code (1989, 2010 Repl. Vol.), § 10-501 of the Business Occupations and Professions Article, and he did not have the benefit of the Majority's after-the-fact determination that he forfeited that right.

The numerical sum of violations does not always reflect the seriousness of the misconduct. These violations, all arising from a single representation in which the first stage of his client's discrimination claim was accomplished, do not add up to an indefinite suspension in my book. A 60-day flat suspension would be more appropriate.

Judge McDonald has authorized me to state that he joins in the views expressed in this dissenting opinion.